## SETH P. MILLS V. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS.

### No. 946. Decided December 17, 1900.

**1. City Ordinance—Prohibited Act—Negligence.**

Quaere: Whether a city ordinance prohibiting the doing of a given act affects the civil rights of the person violating beyond subjecting him to the penalty prescribed, as by making such act negligence in law. (P. 247.)

**2. Ordinance in Derogation of Common Right.**

A city ordinance prohibiting any person from jumping on a moving train, if applicable by its terms to the case of one boarding a train as a passenger, is unreasonable and void, as against common right, with the regulation of which the corporation has no concern, when applied to such act of a passenger when done under circumstances giving him a right to board such train but for the ordinance. (Pp. 247, 248.)

**3. Passenger—Purchase of Ticket—Excluding from Train.**

The right of a railway to prohibit and prevent passengers from boarding a train without tickets is not denied by our statutes (Revised Statutes, articles 4484, 4494, 4542); but the proviso of article 4542 requiring ticket offices to be kept open for half an hour before the departure of trains has the effect of a limitation, not only on the right to charge more than three cents per mile in case of failure to purchase ticket, but on the right to prevent passengers from boarding trains without tickets where the ticket office is not so kept open. (Pp. 248, 250-252.)

**4. Same—Opening Office—Presence of Ticket Agent.**

The requirement of article 4542, Revised Statutes, that the ticket office be kept open for half an hour, means also, that some one shall be there to sell tickets. (P. 252.)

**5. Statutory Construction—Proviso—General Rule.**

The fact that language is introduced in a statute in the form of a proviso will not prevent it from having the effect of a general rule—an independent proposition, rather than a mere limitation of what precedes it—where such appears to be the intent of the Legislature. (P. 252.)

**6. Tickets—Office Not Open—Boarding Train.**

One who has not applied to purchase a ticket has no right to board the train in opposition to the rules of the railway, though the office was not kept open as required by statute. Distinguishing Railway v. McClanahan, 66 Texas, 530. (P. 253.)

**7. Passenger—Ticket—Right to Board Train.**

See facts under which the right of one applying for a ticket when the agent was temporarily out of the office to board the train without it, on the ground that he had been prevented from procuring it by the fault of the agent, was a question for the jury. (Pp. 248-250, 253.)

**8. Passenger Carrier—Negligence—Opportunity for Boarding Train.**

See facts under which it was held a question for the jury whether a railway company failed to perform its duties to a passenger desirous of boarding its train and injured in doing so after it was put in motion,—the negligence consisting in stopping at an improper place, and in misleading the passenger, by deviation from its usual custom, in regard to where he was expected to get on board, and in not allowing him opportunity to purchase a ticket. (Pp. 248-250, 253.)

**9. Same—Proximate Cause.**

See facts under which such negligence was not, as matter of law, to be held a remote cause of the injury received by the passenger in attempting to board the train while in motion. (Pp. 248-250, 253, 254.)

**10. Contributory Negligence—Getting on Moving Train—Question of Fact.**

An attempt to get on a moving train is not negligence per se in one injured in so doing, but the question is one of fact for the jury. (P. 254.)

**11. Evidence—Deduction from Facts.**

Plaintiff suing for injuries received in getting on a moving train should have been permitted to testify that if the agent had been in the office when he applied for a ticket he would have got on the train before it started. (P. 254.)

**12. Evidence—Closing Gates to Car—Contributory Negligence.**

As bearing on the character of plaintiff's act in attempting to board a train in motion, gates to the car platform not having yet been closed, his testimony to seeing them previously closed before starting should have been admitted. (P. 254.)

ERROR to the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

Mills sued the railway company and judgment went for defendant. Plaintiff appealed, and on affirmance obtained writ of error.

*A. C. Prendergast* and *Jones & Sleeper,* for plaintiff in error.—It is beyond the power of a municipal corporation by its legislative act to create a civil duty or liability enforcible at common law, for this power belongs to the State alone. This is especially so in this State, because, among other things, the Revised Statutes, article 3258, expressly provide: "The common law of England (so far as it is not inconsistent with the Constitution and laws of this State) shall, together with such Constitution and laws, be the rule of decision and shall continue in force until altered or repealed by the Legislature."

We have been unable to find any decision of this question in this State. It seems never to have been raised. But it is well established in many of the States, and so far as we know it is so established in every State where the question has been raised. The following authorities clearly establish the above: Railway v. Ervin, 89 Pa. St., 71; Flynn v. The Canton Co., 40 Md., 312; Heeney v. Sprague, 11 R. I., 456; Van Dyke v. Cincinnati, 1 Disney, 532, 17 Am. Rep., 616, note; Admr. Chambers v. City of Cincinnati, 1 Disney, 327; Kirby v. Boylston, 14 Gray, 249; City of Hartford v. Talcott, 48 Conn., 525; Jenks v. Williams, 115 Mass., 217; Knupfle v. Ice Co., 84 N. Y., 488; Moore v. Gadsden, 93 N. Y., 12; Norton v. City of St. Louis, 97 Mo., 537; Fath v. Railway, 105 Mo., 537; City of St. Louis v. Insurance Co., 17

S. W. Rep., 637; Moran v. Palace Car Co., 36 S. W. Rep., 659; Sanders v. Railway, 48 S. W. Rep., 855.

If this were not so the laws of this State would certainly be uncertain and unknown, and no one could ever tell what our civil rights and liabilities would be anywhere in the State, because every little town, village, and city within this State could and frequently would make laws on this subject, and each might be different from the other. And what would be one's civil rights at Granger would be different from those in the towns of Bartlett and Taylor on either side. An examination of the statute under which the town of Granger was incorporated will show that no such power or authority is delegated or attempted to be delegated by the Legislature. This court will readily note the distinction where municipal corporations, in furtherance of and in line with the common law, make such regulations in conformity therewith, such as requiring trains to lessen speed, and to run at certain rate of speed through the corporation, for this is required at common law. Another instance is: In this State the Legislature expressly authorizes different subdivisions of the State, counties, and municipalities to adopt stock laws prohibiting certain character of stock from running at large. In this character of case the Legislature of this State expressly authorizes and permits such.

The proper construction of said ordinance would not embrace a person who in good faith was a passenger, or intending to be such, on the train, although such person attempted to get upon the train after it had begun to move slowly.

Whether or not negligent acts are the proximate cause of an injury is a question of fact for the jury, and not one of law for the court. And where evidence tends to show they are, or when the evidence is such that there is room for ordinary minds to differ as to whether the negligent acts are the proximate cause of the injury, it is error for the court not to submit the question to the jury. Whether or not the injured party is guilty of such contributory negligence as would prevent his recovery is a question of fact for the jury and not one of law for the court, and where the evidence is such that there is room for ordinary minds to differ as to this, it is error for the court not to submit this question to the jury. The evidence in this case showed and tended to show that appellee was guilty of negligence towards appellant which was the proximate cause of his injuries, and that he was not guilty of contributory negligence. It was therefore reversible error for the court to give a peremptory charge to the jury to find for appellees. Washington v. Railway, 90 Texas, 315; Marchand v. Railway, 48 S. W. Rep., 779; Railway v. Mussette, 86 Texas, 719; Jackson v. Railway, 90 Texas, 372; Choate v. Railway, 90 Texas, 82; Choate v. Railway, 91 Texas, 406; Railway v. Dorough, 72 Texas, 108; Railway v. Smith, 59 Texas, 406; Railway v. Murphy, 46 Texas, 356.

It was the duty of the defendant railway company to draw its passenger train alongside the passenger platform at the depot in Granger in

order to afford appellant, as a passenger, the opportunity of getting into the cars from the platform of the station provided for that purpose. 2 Rapalje & Mack, Dig. Ry. Law., 389; Hemmingway v. Railway, 7 Am. St. Rep., 824; Adams v. Railway, 12 S. W. Rep., 637; Railway v. Wortham, 73 Texas, 27; Railway v. Long, 81 Texas, 253; Moses v. Railway, 2 So. Rep., 567.

It is the duty of a railway company to furnish at its depots convenient and safe platforms for its passengers to pass over in going from the ticket office or waiting room to the train, and the platform arranged on the east side of the Granger depot for freight was not a convenient and safe mode for passengers to get from the waiting room or ticket office to the train when the same stopped on the east side of the depot and pulled out over the switch to the main line, as was done on occasion of the injury to appellant. Railway v. Fox, 6 S. W. Rep., 569; Railway v. Long, 81 Texas, 253; Turner v. Railway, 55 Am. Rep., 514; 2 Shearm. & Redf. on Neg., secs. 410, 492a, 510.

It was negligence on the part of the appellee to fail to have its ticket agent in its ticket office at Granger, ready to sell tickets continuously for thirty minutes before and until the departure of its train. Rev. Stats., art. 4542; Railway v. Fox, 6 S. W. Rep., 569; Railway v. McClanahan, 66 Texas, 530; Fordyce v. Manuel, 82 Texas, 527.

The Court of Appeals erred in not holding that the lower court erred in refusing to permit appellant to testify as follows: "If the ticket agent had been at the ticket office when I applied the second time to procure a ticket, then I would have had time to have gotten on the south-bound train at or near the northeast corner of the depot platform before the train moved," this testimony being excluded on the railroad's objection that it called for the opinion of the witness.

The Court of Appeals erred in not holding that the lower court erred in refusing to permit the appellant to testify as follows: "On previous occasions, shortly prior to April 27, 1898, on the defendant's trains, the gatemen on said trains before leaving a station where they had stopped for passengers would close the gates of the train before the train started to move, and I had observed this repeatedly;" this evidence being excluded on the railroad's objections that it was immaterial and irrelevant.

*T. S. Miller* and *Clark & Bolinger*, for defendant in error.—Whether or not the negligent acts charged against the defendant in this cause were the proximate cause of plaintiff's injury was in this case solely a question of law for the court, because under the undisputed evidence, including the admissions and testimony of appellant himself, there was not sufficient evidence to warrant a reasonable belief that the alleged negligent acts complained of caused, or in any manner contributed, either directly or indirectly, to the plaintiff's injuries sued for. Railway v. Bigham, 90 Texas, 223; Seale v. Railway, 65 Texas, 274; Washington v. Railway, 90 Texas, 321; Brandon v. Mfg. Co., 51 Texas,

121; Pinson v. Kirsh, 46 Texas, 26; Murray v. Railway, 73 Texas, 2; Railway v. Goldstein; 2 Wills. Civ. Cas., sec. 274; Deering on Neg., sec. 411; Railway v. Smith, 40 Law. Rep., Ann., 746.

While the question of negligence or contributory negligence abstractly considered is usually a question of fact for the jury, the contributory negligence of appellant in this case was so manifest and clearly established by his own evidence, there being practically no conflict whatever in the evidence, that it became the duty of the court upon the facts to hold, as a matter of law, that appellant was guilty of contributory negligence and that he could not recover, and the court could have properly directed the verdict for appellee on this ground alone. Washington v. Railway, 90 Texas, 314; Crawford v. Railway, 89 Texas, 89; Lee v. Railway, 89 Texas, 583; Sanches v. Railway, 88 Texas, 117; Railway v. Ryon, 80 Texas, 59; Railway v. Dean, 76 Texas, 73; Railway v. Gasscamp, 69 Texas, 545; Railway v. Faber, 77 Texas, 153; Railway v. Bowles, 88 Texas, 639.

Appellant was not entitled to recover in this cause on account of his testimony showing conclusively that his injuries were caused by his own voluntary conduct in violating or attempting to violate the reasonable rules and regulations of the appellee forbidding him to board its passenger train without having previously purchased a ticket, which rules and regulations were admitted by appellant to be thoroughly known and understood by him prior to said accident. Railway v. Lynch, 40 S. W. Rep., 631; Railway v. Goldstein, 2 Wills. Civ. Cas., sec. 274; Beauchamp v. Railway, 56 Texas, 249; Railway v. Dawkins, 77 Texas, 228; Railway v. Brown, 39 S. W. Rep., 326; Railway v. Black, 87 Texas, 160.

WILLIAMS, ASSOCIATE JUSTICE.—This writ of error was granted from a judgment of the Court of Civil Appeals, affirming a judgment of the District Court in favor of defendant in error in a suit brought against it by plaintiff in error to recover damages for personal injuries. The injuries were received in the town of Granger while plaintiff in error was attempting to get upon a moving passenger train of defendant in error for the purpose of taking passage thereon, and the district judge before whom the case was tried by jury, after the conclusion of the evidence, directed a verdict for defendant, the reason for such action not being stated of record. At the time when plaintiff so attempted to enter the cars there was in force in Granger the following ordinance: "Be it ordained by the town council of the town of Granger, Texas: Any person or persons who shall be found jumping or swinging on or off of any moving train who is not in the employ of the railroad company within the corporate limits of the town, shall be deemed guilty of a misdemeanor, and upon conviction in the mayor's court, shall be fined not less than one nor more than ten dollars."

The Court of Civil Appeals held that this ordinance applied to plaintiff's act in attempting to jump on the train while it was in mo-

tion, although he did so intending in good faith to become a passenger thereon; that, as thus applied, the ordinance was valid; and that plaintiff's violation of it constituted negligence per se which precluded him from recovering, and that hence the trial court was justified in directing the verdict against him. To this view we have been unable to agree.

We shall not enter into a discussion of the broad question suggested by counsel for plaintiff in error, whether an ordinance prohibiting the doing of a given act may have the effect of determining the civil rights and liabilities of a person for an act done in violation of it. Some authorities hold that the extent of the power of the municipal corporation, where the ordinance is valid, is to enforce the penalty, and that the civil rights and liabilities of the party are to be determined by the general laws of the State, which the municipal body has no power to change.

But a consideration of this question is wholly unnecessary, for the reason that if the ordinance in question is to be held to apply to such acts as that of plaintiff in error, it would, in our opinion, be unreasonable and void.

By article 593, Revised Statutes, the power of corporations such as Granger to pass ordinances is thus defined: "To enact such by-laws and ordinances, not inconsistent with the laws and Constitution of the State, as shall be deemed proper for the government of the corporation;" and by article 602 it is made the duty of the mayor to enforce such by-laws and ordinances "not inconsistent with the laws of the land as the board of aldermen may enact for the better regulation of the police of the corporation." It may be true that there is no provision of the statute or Constitution directly prohibiting the passage of such an ordinance as that in question, but it is a part of the common law of the State that ordinances not expressly authorized must be reasonable and not against common right. Milliken v. City Council, etc., 54 Texas, 388, and authorities there cited. Napman v. The People, 19 Mich., 352.

The ordinance, if taken as prohibiting persons from getting on trains when they otherwise would have had the right to do so, can not, in any just sense, be deemed one "for the government of the corporation," or "for the better regulation of the police of the corporation." On the contrary, it would simply be a regulation of the rights of the passenger and the carrier in which the corporation had no concern. Not only would it be an attempt to regulate the exercise of the right of the passenger to take passage and of the carrier to receive him, but a practical denial of it, assuming that the circumstances existed to give the passenger the right to get upon the train while moving. If the circumstances did not give the right under the law, then the ordinance adds nothing. We are to be understood as holding only that the interpretation sought to be put upon the ordinance would render it void, without determining whether or not that interpretation

is correct. Its language most naturally applies to acts of a different character from that of plaintiff now in question and it may be that its operation should be restricted to mischiefs over which the corporation had power, and the question, whether or not, when properly interpreted, it is valid, is not before us.

But it is contended that the evidence, without the ordinance, was such as to authorize the trial judge to direct a verdict for defendant. The evidence is voluminous, but it is only necessary to state such facts as the testimony most favorable to plaintiff tended to establish, and consider them in connection with the facts the existence of which is undisputed.

The defendant had adopted a regulation that passengers who had not purchased tickets should not be admitted to its trains, and had equipped its cars with vestibules having doors or with gates closing the entrances to the platforms, and had instructed its servants to open certain ones of the doors or vestibules at stations for the egress and ingress of passengers and to keep the others closed and to admit no one who had no ticket, allowing to passengers unprovided with tickets reasonable time to get them, without unreasonably delaying trains. These rules also required that the gates or doors to the vestibules be kept securely fastened while the trains were running, and that servants exercise the greatest care to see that passengers did not get on or off trains in motion. Plaintiff knew of the regulation requiring of passengers the purchase of tickets and had observed the practice of the gatemen on the trains in opening and closing the gate.

At Granger, two passenger trains were accustomed to meet and pass each other. The station there stood between the main track west and a side track east of it. On the west side was a low platform along the main track provided for and suitable to the use of passengers in getting on and off the trains. On the east side was a high platform generally used for loading and unloading freight on and from trains and not well adapted to the use of passengers. The south-bound train usually arrived at Granger before the north-bound train and entered upon the siding east of the station and there awaited the arrival of the north-bound train, which followed the main track. Sometimes the south-bound train would wait until the other had proceeded north, leaving the main track open, and would then back upon that track and pull down upon it to the west side of the station and stop there for passengers to get on, and at other times it would proceed southward over the side track and on to the main track south of the station, in which event passengers were expected to get on while the train stood upon the side track. The practice in this particular was so uncertain that it could not be known in advance which course would be taken on any occasion, the agent sometimes having to move to the east platform matter which he had placed on the west platform to be loaded upon the train.

Plaintiff, who did not reside at Granger, had frequently traveled on the road, and on every occasion the south-bound train, after the departure of the other, had gone upon the main track and stopped for passengers at the passenger platform, and he had no reason to believe that this was not the uniform practice. On the occasion in question, being at Granger on a visit and desiring to take the south-bound train, he went to the station and into the waiting room to get a ticket some ten minutes before train time. He looked at the ticket window and made some inquiry for the ticket agent, and, not seeing him, went out upon the west platform, where he stood conversing until and for some time after his train arrived and stopped upon the side track, supposing that his train would be brought around to the platform as before. But when he saw the other train coming he made inquiry, and, getting some information, he proceeded to the ticket office again to get a ticket, but the agent was then out to attend to his business in connection with the north-bound train, which reached the station about the time plaintiff reached the office. A bystander pointed out the agent, who was then on the passenger platform north of the station, and plaintiff, after having waited two or three minutes, went towards him for the purpose of asking for a ticket; but as he passed the north end of the station he saw that the south-bound train was in motion, and realizing that he had not time to get a ticket and board it, and seeing the platform at the north end of the station obstructed by machinery so that he could not cross it, he moved in a fast walk south along the west platform and around the south end of the station to the east platform, and in attempting to get upon the train was thrown or fell to the ground, and was injured. The speed of the train had gradually increased while plaintiff was passing around the station, but some of the evidence tends to show that it was still moving very slowly, and to plaintiff as well as to some of the bystanders, it appeared easy to step upon it. While the conductor and a number of bystanders saw plaintiff about to enter the car, the evidence would have warranted the jury in finding that none of them warned him. Although the train was moving, the gate or door was open where plaintiff attempted to enter, and some person immediately preceded him, going upon the train. While waiting for this person to get aboard, plaintiff walked along with the train, grasping the railing around the platform with one hand and holding a light valise in the other, and finally stepped with one or both feet upon the step as the train was near the southern end of the platform, and was pulled or thrown around against the car and fell to the ground beyond the platform.

At the point where plaintiff attempted to board the train the freight platform was about three and a half feet in height; the lowest step of the car was somewhat lower and about fifteen inches, laterally, from the platform; the platform of the car was two or three feet from the platform of the station and the intervening steps of the car were

nearer. Plaintiff had passed over the east platform in going to the station, but had taken no notice of its arrangement, and had no previous knowledge thereof.

When the south-bound train was not to be carried to or stopped at the western platform, it usually stood on the side track so that the front end of the passenger coach farthest forward stood alongside the freight platform and the other cars were extended back from it, and the train in question thus stood. Passengers usually entered the rear coaches from the ground, and sometimes got upon the front coach from the platform. These arrangements were unsuitable and insufficient for the convenience of passengers, while those beside the main track were the proper ones for their purposes. Plaintiff could have gotten on the train in the way indicated had he known that it was expected of him. He knew that one passenger had gotten off and one on, but did not know that the train would not be brought around to the passenger platform.

The evidence shows that the ticket office was open and the agent in it for the purpose of selling tickets for more than a half hour before the departure of these trains, except that he left it when the south-bound train came in, to put on and take off mail or express matter or baggage, returned after doing this, and again left his office as the north-bound train approached. He was thus in his office during the time plaintiff was at the station and until the first train came in, but was out on the second occasion when plaintiff went for his ticket.

These facts, stated somewhat fully because of the peculiar nature of the case, give prominence to these questions: First. Had plaintiff the legal right to get on the train, not having obtained a ticket? If so, second, was there, on the part of defendant, negligence or omission of duty toward plaintiff? Third. Was such negligence a proximate cause of the injury received by plaintiff? Fourth. Was plaintiff guilty of negligence which contributed to such injury? If the evidence tended to show a state of facts under which the jury could have determined each of these questions in favor of plaintiff, then a submission of the cause for their determination was necessary.

If plaintiff did not have the right to take passage upon the train, it was only because the regulations of defendant prohibited the taking of passengers without tickets. It may be regarded as a well settled proposition that railroad companies, unless forbidden by statute, may make and enforce such a regulation, provided they also afford to those desiring to become passengers ample opportunities for the procurement of tickets. Hutch. on Carr., 568; Railway v. Goldstein, 2 Wills. C. C., 274, and authorities there cited.

We think it is true also that the statutes of this State do not forbid railroad companies, if they comply with the rules of law intended to secure to passengers the proper facilities for getting tickets, to require them to do so as a condition of receiving them upon trains. Article 4484 gives to such companies "the right to regulate the time and

manner in which passengers and property shall be transported and the compensation to be paid therefor," subject to other provisions of law. Article 4494 requires them to take and transport passengers, etc., from and to the places specified "on due payment of fare legally authorized therefor."

This does not prescribe the agent to whom the fare shall be paid, but leaves it in the power of the companies, if they see fit, to require that it be paid to a ticket agent, and that a ticket be received from him as evidence to conductors of such payment and of the right to transportation. Article 4542 prescribes the rates of fare which may be charged for carriage of passengers. It fixes such fare at 3 cents a mile; with proviso that "where fare is paid to the conductor, the rate shall be 4 cents per mile, except from stations where no tickets are sold," with two other provisos not pertinent to this case; and the final further proviso, that "railroads shall be required to keep their ticket offices open half an hour prior to the departure of trains, and upon failure to do so, they shall not charge more than 3 cents per mile." This does not affirmatively confer upon passengers the right to get upon trains without tickets and thereby deny the right of the carrier to require tickets as a condition of their admission, but only prescribes the fare in case the passenger is on the train and pays to the conductor. Whether or not one may take passage without a ticket, therefore, depends upon the question whether or not the carrier has by a reasonable regulation, required the purchase of one as a prerequisite to the undertaking to carry.

The regulation in question, so far as it required a ticket, can not in law be held unreasonable, since by its terms it did not deny to any passenger any opportunity, to which the law entitled him, to comply with it by purchasing a ticket. It is not enough, however, that the rule itself be reasonable. In order for it to so operate as to deprive a particular passenger of the right to travel on the train, there must in fact have been afforded to him such opportunities and facilities as the law required to allow him to comply with it. With such a regulation in force, the right of one desiring to become a passenger is to procure his ticket and be transported. The servants of the company can not defeat the right to the ticket by their failure to comply with the law intended to secure it, and, at the same time, refuse admission to the train; but the passenger, if thus defeated, would have the right to travel without the ticket upon payment of the regular fare.

If, therefore, the jury could have found, under the evidence, that plaintiff was prevented from getting a ticket by the failure of defendant's servants to observe the law fixing the measure of their duty in affording him the opportunity to do so, the court could not deny him the right to have the jury pass upon his case on the ground that he did not have the right to enter the train. In the absence of statutory requirements, the defendant, before it could enforce against him its regulation, must have afforded him ample facilities and opportunities

for the purchase of a ticket, and whether or not this had been done would be determined under all of the circumstances of the case. Swan v. Railway, 6 Am. and Eng. Ry. Cas., 327; Railway v. Parks, 18 Ill., 464; Railway v. South, 43 Ill., 176. Even under this rule, we would not be prepared to hold that the evidence was such as to authorize the court to take the question from the jury. But the statute which we have quoted above is more definite. It requires railroad companies to keep their offices open for at least a half hour before the departure of each train, and this requirement is for the benefit of persons intending to take passage and means not only that the office itself shall be open, but that some one shall be there to sell tickets. Fordyce v. Manuel, 82 Texas, 527; Porter v. Railway, 34 Barb., 356; Nellis v. Same, 30 N. Y., 505. The structure of the section in which this proviso is inserted suggests the question whether or not it imposes a general duty to keep the offices open or is intended simply to make that fact a condition precedent of the right to charge passengers without tickets 4 cents a mile. It undoubtedly has the latter effect (Railway v. McClanahan, 66 Texas, 530), but it does not follow that its operation is no broader. Its terms are general and are not such as would most appropriately express only the purpose to impose a condition upon the right to charge more than the regular fare. The language is not that carriers shall have the right to charge 4 cents a mile *if they shall keep their offices open,* or, *provided they keep their offices open,* or even, *provided* they shall keep their offices open; but it is "provided" they "shall be required" to keep their offices open; and the subsequent language merely prescribes what shall be one of the consequences of their failure to comply. The fact that the provision is called a proviso does not prevent the general language having the effect which the Legislature intended, if that is ascertained to be to establish a general rule, and it seems that this language does this and, at the same time, serves as a qualification of provisions which precede it.

Article 4542 is the same as one of the sections of the Act of 1883, which contained many provisions concerning railroads and was not merely one to fix passenger fares. A provision imposing a general duty was not inappropriate in that act, and the fact that it was put in the form of the proviso does not authorize the court to limit its operation. On a similar question, the Supreme Court of the United States said: "We are of opinion that the proviso referred to is not limited in its effect to the section where it is found, but that it was affirmed as an independent proposition and applies alike to all officers of this class." United States v. Babbit, 1 Black, 55. The effect of this statute, therefore, was to entitle plaintiff to the half hour before the departure of the train in which to purchase a ticket, and the defendant could not deny this right and at the same time enforce its regulation requiring a ticket. If the jury should find that, during the half hour, plaintiff applied at the office to purchase a ticket in time to

have gotten one and have entered the train before its departure, and failed to get it on account of the absence of the agent, it would follow that he had the right to travel without a ticket. As the half hour was given him by law, the fact that he had not sooner applied could not be made to defeat his right. We do not think, however, that if he did not apply for a ticket in time to have gotten it and entered the train, had the agent been in the office, the absence of the agent would amount to a denial of any right of his, or entitle him to admission to the train without a ticket.

The decision in the McClanahan case, supra, must be distinguished. It was there held that if the office was not kept open for the half hour, the carrier could not charge more than the regular fare, whether the passenger had gone to the office for a ticket during the half hour or not. But this was based on the imperative concluding language of the proviso, which does not apply here.

1. That there was evidence for the consideration of the jury upon this question, is made obvious by the above recital of the facts.

2. That there was evidence from which the jury could properly have found that the defendant failed to perform duties which it owed to plaintiff, is, we think, quite clear. Having a suitable place at which to stop its train and receive passengers, it established a practice which misled plaintiff into the belief that at such place he would be received, and then stopped its train at a different place where proper facilities did not exist for passengers to board it with safety and convenience, and thus created a condition of things from which we can not say plaintiff was not justified in believing that such stop was not for the purpose of taking on passengers, and that the train would still be brought to the proper place. We have already seen that there was evidence from which the jury could have found that, in addition to this, the defendant also failed to allow plaintiff lawful opportunity to get a ticket and thus hindered him in his efforts to take passage. With this condition existing, we can not say, as matter of law, that it was not negligence towards plaintiff for the defendant to put its cars in motion and thus suddenly put him to the choice of being left or of attempting to get upon the moving train at a place known to defendant, but not known to plaintiff, to be unsuitable. It is not an answer to this view of the case to say that plaintiff had not in any way signified, and defendant's servants did not know of, his desire to become a passenger, for the reason that there was evidence from which the jury might have inferred that his failure to do so in the usual way, viz., by getting a ticket and entering the cars, resulted from the fault of defendant in the particulars pointed out. If the defendant had performed its full duty to plaintiff, of course the moving of the train at the proper time would give him no cause of complaint.

3. Whether or not negligence of the defendant constituted a proximate cause of plaintiff's injury must be determined from a consideration of everything that happened. It would be a mistaken way of

viewing the evidence to take separately each act or omission which may be found to have been negligent and inquire if it alone constituted the proximate cause. The combined effect of all may be considered, and when this is done, and if it be also found that no negligence of plaintiff caused or contributed to the result, we think it can not be said as matter of law that there was not the proper causal connection between the conduct of defendant and the injury to plaintiff.

4. This court has steadily refused to hold that an attempt to get upon a slowly moving train is negligence per se. The question must be, whether or not, under the peculiar circumstances of the case, which are rarely, if ever, the same in two cases, it was negligence to make the attempt, and, except in cases where the evidence is so clear as to admit of but one answer to a rational mind, the question must be left to the jury. Without further comment upon the evidence, we find it necessary to say only that we do not regard this as one of the exceptional cases. What we have said about the facts is to be understood, of course, as only intended to point out wherein we think the evidence was sufficient to require a submission of the case to the jury, and not as the expression of any opinion as to the true deductions to be drawn from it.

We are of the opinion that, as bearing upon the question whether or not plaintiff was denied proper opportunity to get a ticket, his excluded statement that if the ticket agent had been at the office when he applied the second time he would have had time to have gotten on the train at or near the northeast corner of the platform before the train moved, should have been admitted. The jury could have drawn this deduction with data sufficiently certain to enable them to do so, but the times and distances were necessarily somewhat uncertainly fixed, and the situation was one in which the witness, from his knowledge of the events as they transpired, might be able to properly state as a fact that about which he was interrogated, although unable to give with exactness the data upon which his knowledge was based. The court should also have admitted plaintiff's testimony to the effect that he had repeatedly seen the gatemen, before leaving stations, close the gates. In connection with the rule that trainmen should exercise the greatest caution to prevent passengers from getting on trains while in motion and the facts that some of the gates were open and that another person got on just ahead of plaintiff, this evidence bore somewhat upon the character of plaintiff's attempt to enter the train.

*Reversed and remanded.*