MISSOURI, K. & T. RY. CO. OF TEXAS v.
VAUGHAN. (No. 1465.)†

(Court of Civil Appeals of Texas. Texarkana.
June 22, 1915. Rehearing Denied
July 1, 1915.)

CARRIERS ☞287 — PERSONAL INJURY — TAK-
ING UP PASSENGERS.

A carrier is bound to provide a safe and
convenient mode of access to its cars and to
stop a sufficient time to receive passengers at
proper places; but, where it provided a rea-
sonably safe way and afforded plaintiff ample
time to board its car, and had not misled plain-
tiff as to its method of leaving the station or
as to when and where he should board the car,
it was not liable for injury to plaintiff in at-
tempting to board the train at a different place
after it had started.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 1154–1159, 1161–1166; Dec. Dig.
☞287.]

Appeal from District Court, Rains County.

Action by J. L. Vaughan against the Mis-
souri, Kansas & Texas Railway Company of
Texas. Judgment for plaintiff, and defend-
ant appeals. Reversed, and judgment render-
ed for defendant.

This is an action brought by appellee to
recover damages for personal injuries re-
ceived by him while attempting to get upon
a moving train of appellant's for the purpose
of taking passage thereon. Considering the
trial amendment in connection with the peti-
tion, the appellee alleged, by intendment, the
negligence to consist in stopping the passen-
ger coach at a point below the platform of
the station, in deviation of its usual custom,
misleading appellee in regard to where he
was expected to get on board, and in so op-
erating the train, as appellee attempted to
board it, as to cause a sudden jerk forward,
throwing him from the steps of the train on-
to the ground.

The local train, consisting of ten freight
cars, a caboose, and a passenger coach, ar-
rived at Emory on the day of January 11,
1913, on its regular east run to Mineola. It
remained at Emory for about 35 minutes.
When the train reached and made its stop at
Emory the passenger coach rested at a point
between 20 and 30 feet from the end of the
platform of the depot building, a public road
intervening between the west end of the plat-
form and the east end of the passenger coach.
As soon as the train stopped there the con-
ductor placed the step box in position by the
steps of the coach, and discharged from the
coach two passengers for Emory and receiv-
ed several passengers outbound, and a trunk
was loaded into the coach as baggage. The
train remained there between two and three
minutes. The conductor then took up the
step box from the ground and placed it on
the platform of the coach, and the train was
backed west just far enough for the coach
and caboose to clear and leave unobstructed
the public road. The engine and freight cars
were detached from the coach and caboose

and pulled forward. Freight for the station
was then unloaded, and a car placed at the
stock pen, distant between 80 and 90 yards
from the depot building. After finishing all
work for the station the engine and freight
cars were coupled to the coach and caboose,
and the conductor, standing on the depot
platform, signaled the engineer to proceed
to leave the station on final departure. Ap-
pellee had come to Emory from Alba on a
previous train, and had a return ticket, and
was to take this train to his home. Appellee
arrived at the depot while the conductor was
discharging and receiving the passengers, but
did not see, as he says, passengers getting on
and off the train, but did see the conductor,
between 20 and 30 feet from the end of the
depot platform, take up the step box and
place it on the platform of the coach. Ap-
pellee says he did not notify the conductor,
or any agent there of the appellant, that he
wanted to get on the coach, nor did he go to
the coach or to the conductor and offer to get
on the coach; for, as he says, "I in my own
mind knew that it was going to the depot be-
fore it left." But appellee does not say or
claim that he obtained this information from
the conductor or from any agent of appellant's,
nor did he make any inquiry of the conductor
or of any agent of appellant's in regard to
whether passengers would or would not be
received or the passenger coach be placed at
any other place. Appellee testified:

"When they spotted that car at the stock pen
I went over there to look at a cow that was in
that car; I had been looking at the stock.
When I first heard the train or found it was
starting to move east I was between the stock
pen and the depot; I was about ten steps from
the stock pen; and when I heard that I broke
and run towards the east end of the depot. I
saw the conductor board the train up opposite
the door of the station, and I was right at
the end of the platform when the conductor
caught it. * * * The train was going east.
I turned around and took a few steps after the
train, and I caught with my right hand the
corner rod of the caboose; I never did get hold
with my left hand; I never did get but one hand
hold of it; I never did get on the step of the
car; I missed the step, or jerked loose before
I got to it. * * * I didn't run along after
I got hold of that handhold; I just caught it
and it jerked me off the ground—jerked loose
from me."

There is no evidence of any jerk unusual
to the ordinary movement of a mixed train.
Appellee in his depositions in evidence ex-
plains his fall as follows:

The train "was going more than as fast again
that I thought. When I come to think about it,
from where it started it had a right smart lit-
tle start, and it is a little bit down grade there,"
and I "misjudged the speed of the train" and
"missed the steps of the train, and the weight
of my body jerked my hand loose."

The evidence of the record is entirely con-
sistent, and not in any way inconsistent with
the explanation given by appellee in his depo-
sitions as to the cause of his fall and conse-
quent injury. The invariable rule and cus-
tom, it was shown, when the local arrived at
Emory, was to first either stop the coach

at the public road or the depot platform and discharge and receive passengers and then back the coach and caboose west across the public road and leave them there while freight was being unloaded, and after unloading all freight to couple the freight cars and engine back to the coach and caboose and immediately leave the station and not stop at the platform. No evidence appears to the contrary. It was shown without dispute that the public road next the platform was a safe and easily accessible place to passengers alighting from and embarking on the train.

Chas. C. Huff, of Dallas, for appellant. J. M. McLeod, of Greenville, O. H. Rodes, of Emory, and T. F. Ragsdale, of Greenville, for appellee.

LEVY, J. (after stating the facts as above). Appellant by its second assignment of error predicates error upon the insufficiency of the evidence to support a finding of negligence, proximately causing injury, on appellant's part. And concluding, as we have, that this assignment should be sustained, it becomes unnecessary to consider the other assignments.

Carriers of passengers are bound to provide safe and convenient modes of access to their cars, and to stop a sufficient time to receive passengers at proper places. But that there was no evidence from which the jury could properly have found that the appellant failed to perform these duties which it owed appellee is in this case, we think, quite clear. The place at which the passenger coach was stopped does not by any evidence appear in the least way to be unsafe, inconvenient, or improper. Passengers, it appears, got off and on there without inconvenience, and easily and safely; and the place where the coach stood and the entry thereto were easy of access, it appears, to passengers. It is not contended that appellee did not have ample time to enter the coach in the usual way while it was at the point where the passengers were being discharged and received at the time. Appellee had his ticket, and was not hindered by the conductor, or by any one, from getting on the coach at the time. Appellee did not go into the coach at the time, simply for the reason that he believed, as he said, that the coach would be brought to the depot platform for passengers to board it. There is an utter absence of any evidence, though, to show that appellee was induced by any act or statement or practice or custom of the agents of appellant to believe that such stop was not for the regular and usual purpose of receiving passengers and that the coach would be brought to the depot platform for the purpose, which was between 20 and 30 feet distant from where it was at the time. According to the record it was the invariable rule and custom at that station, after passengers had been discharged and received,

to back the coach and caboose west across the public road, and not thereafter stop it at the platform to receive and discharge passengers. Therefore, the evidence showing, as it does, that the company had provided a reasonably safe way and afforded appellee ample time to get into the coach, and had established and used only one mode and rule for its train to leave the station after discharging and receiving passengers, and there being no deviation from the usual custom of final departure of the train from the station after discharging and receiving passengers, misleading appellee as to when and where he should board the train, and appellee seeing that passengers were being discharged and received at the place where they were being so discharged and received, appellant would not be responsible, by reason of any negligence on its part, for the consequences of appellee's voluntarily using another way, of his own choosing, in attempting to board the train. The facts of this case, in essential points, distinguish it from the case of Mills v. Railway Co., 94 Tex. 242, 59 S. W. 874, 55 L. R. A. 497.

The judgment is reversed, and here rendered in favor of appellant, with costs of the district court and of this appeal.