THE LEAVENWORTH COAL COMPANY v. JOHN
RATCHFORD.
NO. 446.

1. BROKEN ELECTRIC WIRE —*plaintiff prima facie entitled to recover for injuries received in attempting to remove from his property.* During a storm, a live, broken wire from an electric-light company's line fell upon one of the plaintiff's buildings and was emitting a blaze and sparks apparently endangering his property; and, in attempting with a base-ball bat to remove it from the building, the wire was unexpectedly thrown down, and the plaintiff, coming in contact with it, was severely injured. *Held*, that not the plaintiff's act in attempting to remove the wire, but the company's negligence in permitting its wire to be broken and to fall upon the plaintiff's building, was the proximate cause of his injuries ; and that the foregoing facts, *prima facie* entitled the plaintiff to recover from the company for the injuries suffered by him.

2. ——— *such attempt not contributory negligence.* The attempt of one, using ordinary prudence, to remove a live, broken

electric wire apparently jeopardizing his property, will not be held, as a matter of law, to be contributory negligence barring a recovery by him for injuries received in such attempt.

3. ———— *company occupying streets with electric wires bound to be vigilant to prevent injury from.* It is the duty of a company occupying the streets and alleys of a city with poles and overhead electric wires, to employ enough men and to use the best devices known to prevent injury to the inhabitants or their property by the displacement or breaking of such wires, and to be especially vigilant in case of a storm likely to cause such displacement or breaking.

Error from Leavenworth District Court. Hon. Robert Crozier, Judge. Opinion filed April 30, 1897. *Affirmed.*

This was an action for damages for injuries suffered by the defendant in error from contact with a broken electric-light wire belonging to the plant operated by the plaintiff in error in the city of Leavenworth. As gleaned from the evidence, the facts were, that, during the early hours of the morning of May 7, 1889, a storm of rain, wind, thunder and lightning occurred, which raged till about four o'clock A. M.; that about 6 A. M. the defendant in error discovered that one of the plaintiff in error's wires had broken and that one end of it had fallen upon a stable or shed at the rear of his premises and was emitting sparks and blazing, to the apparent danger of his buildings. Seizing a base-ball bat he went out and sought to remove the wire, and, in doing so, as it fell to the ground unexpectedly, he in some manner came in contact with it and was severely shocked, thrown down and apparently killed; that as a result he suffered much pain and was permanently crippled; that the plaintiff in error was operating a line of over forty miles, and employed, besides a superintendent and a lineman, two engineers, one of whom had charge of

the plant from 7 A. M. till 7 P. M., and the other from 7 P. M. till 7 A. M.; that about five o'clock that morning, the night engineer discovered something was wrong with the operation of the plant and called the superintendent by telephone, and after three calls, that official came and perceived that something was wrong, but could not locate the trouble — except that it was out on the line and not in the plant itself; that the superintendent spent a half or three-quarters of an hour in his investigations, when a boy arrived and informed him of the accident to the defendant in error, whereupon the plant was shut down and the superintendent repaired to the scene of the accident; that the plaintiff in error had in use a magneto bell, the latest and most improved device for ascertaining whether the circuits were complete and whether any wires were broken or grounded, but, although the superintendent had it at hand and had often used it before, its use was not resorted to on this occasion; that the plant could have been suspended, this test applied and operations resumed in three minutes, but, as expert electricians testified, under the conditions prevailing at the time, the test would not have disclosed the break but would have indicated an unbroken circuit.

The defendant in error had a verdict for twelve hundred dollars, upon which judgment was entered, and a number of special questions were answered by the jury. The plaintiff in error's motion for a new trial having been overruled, it excepted, and brought this proceeding in error. The errors assigned fully appear in the opinion.

*Hook & Atwood,* for plaintiff in error.

*C. F. W. Dassler* and *Lucien Baker,* for defendant in error.

LEAVENWORTH COAL CO. v. RATCHFORD.     153

April 30, 1897.     Opinion.   Mahan, P. J.          E. Div.

MAHAN, P. J.  Counsel for plaintiff in error make in their brief eleven assignments of error.  The first is, that the jury erred in finding that the failure to use the magneto bell contributed to the accident. The special findings of the jury upon that question are as follows :

"Is the magneto bell the best or most approved device for the purpose of ascertaining whether an electric current is broken or not?"   A.   "Yes."

" Did the defendant have such magneto bell in its power house when the electricity was being generated at the time of the injury complained of?"   A.   "Yes."

" If, when it was discovered in the power house that something was wrong, the machinery had been shut down, or the electric current shut off, and the magneto bell had been used for testing whether the outside circuit was complete on which the broken wire was, would such test have shown that the circuit was complete?"   A.   "We do not know."

" Would such test as mentioned in the last question have indicated that the wire was broken?"   A.   "We do not know."

40.  "Do you find that the negligence of the defendant was the proximate cause of the injury?" A.   "Yes."

43.  "If you answer question forty 'Yes,' then state whether such negligence consisted in not using the magneto bell and testing whether the circuit was complete."   A.   "Yes."

These are the only special findings of the jury which indicate that they found or held that the failure to use the magneto bell contributed to the accident.  The evidence is sufficient to sustain the findings ; the trial court passed upon them and the evidence in their support, and approved them ; and we cannot say from the record that the jury was guilty of any wrong or error in making them.

154    LEAVENWORTH COAL CO. v. RATCHFORD.

N. Dept.        Opinion.    Mahan, P. J.        5 Kan. App.

The second assignment of error is that the answer of the jury to question forty-three is against the law and the evidence. Question forty-three is the last finding quoted above, and we think counsel have fallen into an error in their reference, for they add : "The failure to shut down the machine was not negligence." Special finding forty-four is as follows :

"If you answer that the defendant was negligent, then state the specific acts or omissions that constituted the defendant's negligence which was the cause of the injury." A. "For not shutting down the machine when they found there was something wrong."

Counsel doubtless intended to refer to special finding forty-four, instead of forty-three, in this second assignment. We cannot say that this finding is against the evidence ; on the contrary, the evidence abundantly supports it. More than an hour before the happening of the injury, the engineer in charge was apprised that there was something wrong with the plant. The superintendent was called, and he had fully three-fourths of an hour's notice of some disturbance in the operation of the plant. He at once discovered that it was not in connection with anything inside of the plant, but that the difficulty was upon the line. A company operating such dangerous machinery as an electric plant for lighting ought to be held to the strictest rule of care and attention in its use ; to the highest degree of care and attention exercised by men in the management of their affairs. It must be held to know the dangers that attend the operation of such a plant — that a live wire is exceedingly dangerous ; and it was not too much to say upon the evidence that the defendant Company had such notice of danger as to put its agents upon their guard and require them to exercise all the means and

·  LEAVENWORTH COAL CO. v. RATCHFORD.    155

April 30, 1897.    Opinion.  Mahan, P. J.    ·E. Div.

devices they had at hand to prevent any accidents that might. occur.   Indeed, it was a small thing to do.   It was easy to suspend the electric current.   It appears from the evidence that in three minutes the Company could have done this, applied the test that was at hand, and have ascertained whether anything had happened from which harm might come to the persons or property of the inhabitants of the city. The answer is not against the law or the evidence.

At the request of the plaintiff, the court gave the following instruction :

"If the jury from the evidence believe that the defendant could, by the exercise of due care and caution in and about its business of lighting the streets, stores and buildings aforesaid, have prevented one of its wires from falling upon the premises and upon the shed or barn of the plaintiff, then it was its duty to do so ; and if the same could have been prevented by the exercise of due care and caution then it was the duty of the defendant to have exercised such care and caution ; and if you find that such care and caution was not exercised, and that one of the wires of the defendant, because thereof, did fall into or upon the barn or shed of the plaintiff, then the defendant would, in any case, be guilty of negligence."

Counsel for the plaintiff in error criticise this instruction because of the expression "due care and caution ; " that it assumed that the Company might, by the exercise of due care and caution, have avoided inflicting the injury upon the plaintiff.   Taking this instruction in connection with the other instructions, it is not open to any criticism ; because the court had told the jury what care or degree of care and attention constituted due care and caution.   Instructions must be taken together, and not a single one, or a single paragraph, or a single clause considered by itself for the purpose of saying that the court erred.

The further assignment of error is that the defendant, plaintiff in error, requested the court to instruct the jury as follows, which the court refused to do, to wit :

"If the jury finds from the evidence that the injury was done to the plaintiff by means of one of the defendant's electric wires, no presumption arises from that fact alone that the defendant was negligent in such matters."

This principle of law was covered by the court in its general instructions.

The fifth assignment of error is that the court refused to give to the jury, at the request of the plaintiff in error, the following instructions :

"6. If the jury should find that ignorance of the plaintiff of the fact that an electric-light wire emitting sparks and flames might be dangerous to handle, induced him to so act with reference to such wire as to cause the injury complained of, you should find for the defendant.

"7. If the jury should find that the ignorance of the plaintiff of the fact that an electric wire emitting sparks and flames might be dangerous to handle, induced him to so act with reference to such wire as to contribute to the injury complained of, you should find for the defendant.

"8. If the jury should find from the evidence that the plaintiff voluntarily picked up the electric-light wire with his hand, knowing the same to be alive or to be emitting sparks and flames, and the injury was thereby caused, you should find for the defendant."

"13. If the jury find from the evidence that the electric wire which plaintiff came in contact with was emitting sparks and flames at different points, and the plaintiff observed and knew such to be the case, then he should have known that a personal contact with such wire might cause injury.

"14. If the plaintiff knew that the said wire was

LEAVENWORTH COAL CO. v. RATCHFORD.    157

April 30, 1897.        Opinion.    Mahan, P. J.            E. Div.

emitting sparks and flames, then he should have known that it was charged with electricity.

"15. The plaintiff must, as a matter of law, have known that a broken electric-light wire, charged with electricity, might be dangerous to him if he came in contact with it.

"16. If the plaintiff conducted himself or acted, in his endeavor to remove the electric-light wire which caused the injury, as though the same were harmless under any circumstances, and because of his so acting and conducting himself the injury complained of was incurred, you should find for the defendant."

These instructions are based upon the assumption that the plaintiff voluntarily came in contact with the wire, and that his contact with it was wilful; that he purposely came in contact with the wire. It is assumed that he was bound to know that an electric wire emitting sparks and flames was dangerous to handle, and that he ought not to have attempted to remove it from his barn under any circumstances. The evidence does not support either of the assumptions. Nor can it be said, as a matter of law, that, in the year 1889, every person, or any person, was bound to know that an electric wire was such a dangerous instrument that one whose property was apparently jeopardized by its presence ought not to attempt in any manner to remove it. The question to be submitted to the jury was: Did the defendant in error use due care and attention in attempting to remove the wire from his buildings?

The sixth assignment of error is:

"In the general instructions to the jury, the court, in passing upon the question of contributory negligence, virtually said that in order to defeat a recovery the plaintiff must knowingly have contributed to his own injury."

The instruction referred to is as follows :

" But if they were convinced by what the law calls a preponderance of the evidence that they were negligent, then he would not be entitled to a verdict if he contributed — in the meaning of the law, *which I will explain* — to his own injury ; that is, if he knowingly contributed to his own injury."

Subsequently the court did explain fully what it meant by *"knowingly"* contributing to his own injury ; and, taking the entire instructions, the jury could not have been misled.   The contention of counsel is based upon the rule that the plaintiff was bound to know, and to act upon the knowledge, that this wire was so dangerous that he was precluded from in any manner attempting to remove it from his premises ; but this is not the law in the case.

The seventh assignment of error is as follows :

" Upon the question of the degree of care and diligence incumbent upon the defendant Company to exercise, the court instructed the jury as follows :

"And that it would be its duty under such circumstances, as far as it could do so by the exercise of the highest care and diligence, to prevent an injury of this character, it is hardly necessary for me to say ; because the jury will infer, from what they heard in this case, and probably from their common knowledge of such subjects, that the electric-light machine, including the wires, is a dangerous machine, etc."

And again :

"As to the care that is necessary to be used by the defendant in the suit, I will say to you that this being a dangerous machine for the purpose of producing and distributing electricity in the city, the law holds the defendant to the highest degree of care known for the purpose of preventing injuries arising from the use of that instrument ; the law being that the care that a person must take in the use of an appliance

LEAVENWORTH COAL CO. v. RATCHFORD.    159

April 30, 1897.    Opinion.    Mahan, P. J.    E. Div.

that may be dangerous must increase in proportion to the danger in the use of the appliance, so that if this is a highly dangerous instrument that the highest care would be necessary in providing against injuries from its use."

This is a fair statement of the law of the case, and as favorable to the defendant as it was entitled to under the facts. We do not deem it necessary to enter into an argument of this proposition. The instructions were in accord with the authorities. *Haynes v. Raleigh Gas Co.*, 114 N. C. 203, 19 S. E. Rep. 344; *Uggla v. West End Street Railway*, 160 Mass. 351; *Denver Consolidated Electric Co. v. Simpson*, 21 Col. 371, 41 Pac. Rep. 499; *Larson v. Central Rly. Co.*, 56 Ill. App. 263.

The eighth assignment of error is that the court refused to instruct the jury to find for the defendant. This assignment is based upon the proposition that the injury was not the proximate result of negligence on the part of the defendant. The claim is that the attempt of the plaintiff to remove the wire from his building was the interposition of a new cause; in other words, that the Company was not, under the law, in the ordinary course of events, held to have contemplated that, when it was guilty of such negligence as that of leaving a live wire on the premises of an inhabitant of the city, he would be injured by attempting to remove it for the purpose of avoiding danger to his property. The position is untenable. The plaintiff's property was apparently exposed to a conflagration by the presence of the fire. The court told the jury that if it was a fact that the wire in the condition in which it was did endanger the plaintiff's property — not apparently, but in fact — and the Company knew it, then the negligence of the defendant in permitting the wire to be there was the proximate cause of the in-

jury. This was as favorable a presentation of the
law to the facts as the defendant could ask. The as-
sumption of counsel for defendant in their brief is, that
the plaintiff might undertake to remove the wire in
an attempt to save human life, but not to save his
property. It will not do to say, as a proposition of
law, that where a company is engaged in the exercise
of as dangerous a business as that of the defendant, it
may expose the property of citizens to a conflagration
without any right on their part to attempt to preserve
it. The court, in its instructions, told the jury that it
was the plaintiff's duty, when he saw that his property
had been exposed to danger, even by the negligent
act of the defendant, to exercise reasonable care to
prevent the injury, if he discovered it in time. This
is the universal rule of law; it is a rule founded on
honesty and integrity; and it ought to be applied in
all its force to the defendant Company under the cir-
cumstances in this case.

The ninth contention of the plaintiff in error is, that
the court refused to submit to the jury the question,
whether the plaintiff in building his improvements
had not encroached upon the alley, and whether a
part of his improvements were not beyond the line of
his property and in the alley. One of the allegations
of the petition is that the defendant, in constructing
its line of wires in the city, and especially in the alley
in the rear of the plaintiff's premises, so constructed
it, that the wires hung over, and were liable to fall
upon, the improvements of the plaintiff. It appeared
by the evidence that the plaintiff knew of the facts at
the time of the construction of the line, and that his
conduct with reference thereto amounted to a license
to the defendant Company to so construct its line and
to maintain it in the position it did, and that there-

fore the question of negligence on the part of the defendant Company in the construction of its line was out of the case. This ruling of the court was most favorable to the defendant, and, instead of being prejudicial to its interest, was in its interest, and the Company has no cause to complain.

A part of this assignment of error is, that the court refused to submit to the jury questions as to whether the plaintiff's improvements encroached upon the alley or not. Upon the holding of the court that the plaintiff could not rely upon this allegation· of negligence, it became utterly immaterial, and the court properly refused to submit to the jury any special questions upon that subject.

The tenth assignment of error is, that the answer to the forty-third finding submitted by the defendant to the jury indicates that the jury were prejudiced against the plaintiff and that it had no show for a fair trial. It is only necessary to say in this connection that after a very careful consideration of the record covering the whole course of the trial, including the instructions of the court, we are impelled to the conclusion that the court treated the defendant, plaintiff in error, most fairly and considerately ; that there is no indication of any bias or prejudice upon the part of either the court or the jury ; that the findings referred to, taken in connection with the other findings and the facts and circumstances of the case, do not indicate, as suggested by counsel, that the jury entertained any bias or prejudice, or feeling of unfairness toward the plaintiff in error, whatever.

The eleventh assignment of error is that the court refused the motion for a new trial. There being no error in the record, the trial having been a fair one, the plaintiff in error having been denied no right or

. 11—5 KAN. APP.

privilege to which it was entitled under the law, the instructions taken as a whole being most favorable to the plaintiff in error, and the result being a fair and just one, there was no ground for a new trial, and the motion was properly overruled.

The judgment of the lower court is affirmed.