## CHILD INJURED BY ELECTRIC LIGHT WIRE IN STREET.

[Circuit Court of Richland County.]

THE CITIZENS ELECTRIC RAILWAY, LIGHT & POWER CO. v. EM-
METT BELL, BY HIS NEXT FRIEND.*

Decided, January Term, 1903.

*Negligence—Electric Wires in Street—Duty of Company toward Per-
sons Using Street—Degree of Care Required as to Wires—Degree
of Care Expected of Children, a Question for the Jury—Expert
Evidence—Opinion of Physician.*

1. A corporation, permitted to construct and maintain an electric
street railway, with all the electric appliances incident thereto,
in the public streets of a city, for the purpose of private gain,
owes the duty to persons upon such streets of so conducting its
business as not to injure them. It must, therefore, keep its wires
out of the way of persons using the streets, so that they will
not, by coming in contact with such wires, receive personal in-
juries, and the fact that it has not done so raises a presumption
of negligence against it.

2. An electric company, permitted to use the public streets for its
own purposes, is required to exercise a high, if not the highest,
degree of care in the operation, construction, inspection and re-
pair of its wires and poles, to the end that travelers along the
highway may not be injured by its appliances; and, if a wire,
charged with a deadly current of electricity, falls from its proper
place of elevation above the street to the surface of the street,
and there, by contact with a boy lawfully passing along the high-
way, injures him with its current, the law raises a *prima facie*
case of negligence. The burden of proving that there was no
negligence, in such case, is on the company. The maxim, *res
ipsa loquitur*, applies.

3. A child is held to such care and prudence only as are usual among
children of his age and capacity. A child of seven years of age
is not guilty of negligence if he exercise that degree of care
which under like circumstances would reasonably be expected
from one of his years and intelligence. Whether he used such
care in a particular case is a question for the jury.

4. A practicing physician, familiar with the nature, extent and con-
dition of the injury in question, in its early stage or history, being

* Affirmed by Supreme Court, without report, May 3, 1904 (70 O.
St., 482).

322    CIRCUIT COURT REPORTS—NEW SERIES.

Citizens Electric Railway, etc., Co. v. Bell.   [Vol. V, N. S.

asked as to the extent of the injury, or if he could, at the time of trial, determine as to whether or not the injury would be permanent, answers that he could form an opinion, may give it is his opinion that such injury is, or is not, permanent.

Error to the Court of Common Pleas of Richland County.

The plaintiff below, Emmett Bell, an infant of the age of seven years, by his next friend, Andrew W. Bell, commenced this action in the Court of Common Pleas of Richland County against the Citizens Electric Railway, Light & Power Company, to recover damages for a personal injury which he alleged to have suffered by reason of the negligence of the defendant company.

The plaintiff, after stating that defendant is a corporation organized under the laws of the state of Ohio, alleges that as such corporation, it conducts what is known as an electric street railway, the motive power of which is electricity, said electricity being conducted along and through wires that are suspended upon poles throughout certain streets in the city of Mansfield, Ohio; that as an incident to said wires at certain intervals along what is known as the main wires through and over which said current is carried, there is what is known as feed wires, which, when properly handled, are placed in such positions as to be harmless to any one coming in contact with the same. Plaintiff further says that on or about the 19th day of August, 1901, at or near what is known as the northwest corner of the East Fourth Street schoolhouse, in said city, one of said feed wires extended from the main wire over which said electric current passed to a certain pole and then to the ground below. That said feed wire was what is known as a live wire, that is to say charged or filled with electric current, and that said wire was carelessly, recklessly and negligently left lying upon the ground exposed and in such condition as to be of great danger to any person not acquainted with its dangerous character. That said wire was so left by defendant company, and on said 19th day of August, 1901, the said Emmett Bell, a youth of tender years, to-wit, of the age of seven years, being unacquainted with the use or nature of the dangerous character of said wire, came in contact with the same, and by reason of the electric current

contained therein, was dangerously burned and mutilated in and upon the index finger of his left hand; that his nervous system was greatly shocked, and he was thereby rendered sick, nervous and prostrated on account thereof; that his said finger to the present time is stiffened and in bad condition, and in all probability will never be of proper use to him. That, on account of the wound made by the burning wire, the said Emmett Bell was subject to great and excessive loss of blood, and otherwise shocked and rendered weak on account thereof. That said injuries were occasioned wholly on account of the negligence of the defendant company without any fault of the said Emmett Bell. Plaintiff says that on account of said injuries he has suffered great pain and distress of body and has been damaged in the sum of $3,000, for which he asks judgment.

The answer, for a first defense, admits that defendant is a corporation organized under the laws of the state of Ohio; that as such corporation it conducts what is known as the Electric Street Railway, the motive power of which is electricity. It admits that said electricity is conducted along and through wires that are suspended upon poles throughout certain streets of the city of Mansfield, and denies the other allegations of the petition. For a second defense the defendant avers that whatever injury the said Emmett Bell sustained, if any, was caused by his own negligence and fault, and not by reason of any fault of defendant.

Plaintiff's reply to this second defense was a general denial.

The cause was tried to a jury, resulting in a verdict for plaintiff, and the jury assessed his damages at $755. Motion for a new trial, filed by defendant, was overruled. Judgment was entered for the amount of the verdict and costs. The bill of exceptions containing all the evidence was taken and made a part of the record. Error is prosecuted to this court to reverse the judgment of the court below.

VOORHEES, J.; DOUGLASS, J., and DONAHUE, J., concur.

The only questions presented and urged as reasons for a reversal of the judgment of the court below are:

1. In the admission of evidence offered by plaintiff below against the objections of defendant.

324    CIRCUIT COURT REPORTS—NEW SERIES.

Citizens Electric Railway, etc., Co. v. Bell.   [Vol. V, N. S.

2.  In the charge of the court.

3.  In the court refusing to charge as requested by defendant below.

1.  It is claimed that the court erred in permitting Doctor R. F. Boles to answer the following questions in his direct examination, to all of which questions and answers defendant objected; the court overruled the objection and defendant excepted:

"Q.  From the extent of that injury could you determine whether or not it would be permanent?

"A.  Well, that would be an absolute impossibility for me to tell.  Perhaps I could form an opinion.

"Q.  What do you say now as to whether or not, in your opinion, that injury will be permanent?

"A.  My opinion was that the injury would be permanent.

"Q.  What is your opinion now?

"A.  I haven't seen it lately.

"Q.  What is your opinion now, from what you saw at the time, as to whether or not the injury will be permanent?

"COURT: He has answered that question.

"Q.  What is your opinion now, based on what you then saw, as to whether it is a permanent injury or not?

"A.  That is a difficult question for me to answer.  I can not tell now what the condition is.

"Q.  Judging from his condition at the time, what is your opinion as to whether that will be a permanent injury, from what you saw at that time, are you still of the same opinion?

"A.  My opinion is the same.

"Q.  Suppose that this finger at this time is shrunken, and suppose that the boy, in the use of his hand, holds his finger out like that (illustrating), and suppose that when his mother would wash his hand he would cry, when she would wash that finger he would cry, and suppose that finger is now smaller than the other index finger, sweenied away somewhat, and when he touches anything there is evidence of his having pain in that finger, what would you say that would indicate as to whether the injury would be permanent?

"A.  It would indicate permanent impairment."

It is contended that the evidence is incompetent on two grounds:

First, that the petition does not allege permanent injury; second, the witness, Dr. Boles, does not qualify to give an opinion.

. There was no motion filed to the petition to correct it in form. The allegations as to the injury are, that "his (plaintiff's) index finger of his left hand was dangerously burned and. mutilated; that his nervous system was greatly shocked, he was rendered sick, nervous and became prostrated on account of said accident; that his said finger, even to the present time, is stiffened and in bad condition, and in all probability will never be of proper use to him."

If the petition will admit of proof as to the extent of permanency of the injury, it is by reason of this clause, "that his said finger, even to the present time, is stiffened and in bad condition, and in all probability will never be of proper use to him."

The allegations are indefinite and loosely drawn, but this is a defect in form and should have been corrected by motion. No objection having been taken to the pleading on this ground, a liberal construction is to be given to it, in the introduction of evidence, and it was not error to admit competent evidence as to the extent and permanency of the injury.

Did the court err in admitting the testimony of Dr. Boles as to the extent or permanency of the injury?

This depends upon whether the witness qualified himself to give an opinion. From the examination of the witness it appears he was somewhat familiar with the nature, extent and condition of the injury in its early stages or history. Knowing its early condition, and being a practicing physician, he is asked as to the extent of the injury, or if he could then, at the time of the trial, detremine as to whether or not the injury would be permanent. He answers he could form an opinion, and he gives his opinion that it would be permanent.

The rule in such case is, that before such opinion is called for, it must appear that the witness has an opinion, or is then able to form one upon the matter in question. Such qualification of the witness, Dr. Boles, is shown in the record, and, therefore, it was not error to permit this evidence to go to the jury. *Railway Co.* v. *Bailey,* 11 O. St., 333, 337 and *Koons* v. *State,* 36 O. St., 195, 200, are authority in support of our conclusion.

2. The principal questions in this case arise upon the charge of the court and in refusing to charge as requested by defendant below.

The court, after stating the nature of the action, proceeded to charge the jury as follows:

"The principal question that really arises in this case is the degree of care that a person introducing modern electric machinery is required to exercise in order that the parties having a right to occupy the street the same as they have, in order that by the appliances they have, which are conceded to be deadly if one comes in contact with them; the question is, what degree of care must the party so occupying a public street in the city exercise in order to be regarded as free from negligence where a party is injured by a live wire.

"That degree of care depends upon the nature of the appliances that the party is using on the public highway. All I can say to you is that it is only ordinary care under the circumstances, but that ordinary care may reach a very high degree. Ordinary care on some occasions may be an extremely high degree of care, because of the deadly nature of the machinery that it sets to work.

"It probably will not be necessary for me to say anything to you in substance on the subject of the negligence of the child. He was only required to exercise that care and judgment and skill that you would expect a child of that age to exercise. Contributory negligence is not to be attributed to an infant, who, by reason of his infancy, has not acquired the capacity and ability to take care of himself under situations of danger.

"It was the duty of the defendant to exercise a high degree of care, and a high degree of care would be only ordinary care, to protect the public against live wires falling upon the streets of the city. It was the duty of the defendant to exercise a high degree of care, and a high degree of care under those circumstances would be only ordinary care, to protect the public against the consequences that might reasonably be foreseen by it, that a live wire of that kind might inflict upon the citizen. It must use proper material; it must use a high degree of care in making its system safe, and if it does not do that, and by reason of any want of care of that kind, child, not having reached the age of discretion, is injured on the public streets of the city by its defective system, it is liable. That is all I need to say to you on the subject of the liability of the defendant and the conduct of the plaintiff."

. Exceptions to the charge as given and to the refusal of the court to charge as requested raise the questions of law of the case, and it must be conceded at the very threshold, that the questions are new and important in the law of negligence, especially so far as decisions in our own state are concerned.

. It is either admitted in the pleadings or disclosed in the record in the case, that the Electric Railway Company, defendant below, at the time of the injuries complained of, operated an electric street railway in the city of Mansfield, Ohio, the motive power of which was electricity, conducted along and through wires suspended upon poles throughout certain streets in said city; that the wire in question was owned by said company and was attached to its main wire on East Fourth street in said city and used for the purpose of furnishing power to drive a motor in a small manufacturing plant, and that the electric current was communicated to this wire from said main wire. That at the time of the accident and the injury to the plaintiff complained of this wire in question was broken, and the end which was attached to the main wire was charged and was hanging down one of the poles upon which it had been suspended, and the broken end was lying on a grass plot between the sidewalk and the street proper on said East Fourth street, at the corner of an alley running at right angles with said street. That the insulation on this broken wire was defective and the wire itself exposed. And further, that it had been so broken and lying on the ground for at least twenty-four hours before the accident complained of occurred. It also appears from the record that the plaintiff below was a boy seven or eight years of age and was living with his parents on said East Fourth street almost directly opposite the place where this broken wire was lying on the ground. That while playing on the sidewalk this boy came in contact with this charged wire so lying upon the grass plot and received the injuries complained of.

At the conclusion of the testimony offered by the plaintiff the defendant company submitted a motion asking the court to take the case from the jury and direct a verdict in favor of defendant. The court overruled said motion and the defendant at the time excepted. Thereupon the defendant rested its case.

328   CIRCUIT   COURT   REPORTS—NEW   SERIES.

Citizens Electric Railway, etc., Co. v. Bell.   [Vol. V, N. S.

Is it to be presumed from these facts alone that there was such negligence on the part of the electric company as to require it to show that the dangerous condition of its property was not attributable to its negligence, but from some defect, which in the exercise of that reasonable care and prudence proper in the case of electric wires, it was unable to discover, or some accident beyond its control? In other words, was it from unavoidable accident?

In the case of an electric wire, in the position and condition that this one is assumed to be, the law raises a *prima facie* case of negligence against the owner. As a rule negligence is not presumed, but there are cases were the maxim *res ipsa loquitur* is directly applicable, and from the thing done or omitted negligence or care is presumed. In our judgment this is a case wherein that maxim applies. The rule can not be more concisely stated, in its generality, than as given in *Scott* v. *London & St. R. R. Docks Co.*, 3 Hurl & Colt, 596, where the court held:

"There must be some reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care."

This doctrine has been applied to those using electricity in streets. Public policy, from sheer necessity, must require of a person or corporation using the current of electricity in high tension along highways a very high if not the highest degree of care, and this high degree would seem all the more reasonable to justify this rule of presumtive negligence in such cases. The degree of care in the nature of the case being high, and there being little danger if such care be exercised, if an accident happens there is offered a probability of the absence of that care.

In the case of *Newark Electric Light & Power Co.* v. *Ruddy* (1898), 62 N. J. Law Rep., 505, the court held:

"Proof that an electric light wire, controlled by a private corporation, and normally suspended upon poles along a public

street, was trailing broken on the sidewalk, affords a presump-
tion of negligence in a suit against such corporation by a person
injured through electric shock by contact with such wire. 'Res
ipsa loquitur.' "

In that case the plaintiff, a child of eight years, picked up
from the sidewalk of a public street the end of a broken wire
that trailed from one of the poles on which it should have hung
suspended, and sustained severe injury through electric shock.
The wire was an electric light wire, under the control of the
defendant. No explanation or exculpatory evidence was offered
in defense.

Collins, J., on page 506, says:

"The defendant was, by law, permitted to suspend along a
public street a wire charged with electricity as to be dangerous
to the public if it should break and fall upon the street. This
privilege entailed upon it a very high degree of care to main-
tain the wire intact. It was permissible to presume a lack of
exercise of such care when the proof showed the wire broken and
trailing on the sidewalk under conditions that rendered possible
serious injury to persons lawfully there. Unexplained the pres-
ence on the highway of the charged and broken wire and the
fact of injury received therefrom justified an inference of neg-
ligence in the defendant in whose control and management it
was. Such an inference has been judicially permitted even when
the wire that broke received the electricity from a wire on which
it fell. *Haynes* v. *Gas Co.*, 114 N. Car., 203" (41 Am. St. Rep.,
786; 26 L. R. A., 810).

In the case of *Haynes* v *Gas Co.*, *supra,* the court held:

"If a corporation is permitted to maintain electric wires in
the public streets, and one of such wires is detached from a tree
to which it has been fastened, and is hanging to the ground
charged with a deadly current of electricity, which it received
in coming in contact with the feed wire of another corporation,
and a boy taking hold of the wire is killed, the corporation to
which the detached wire belongs is presumed to have been negli-
gent, and must assume, in action for damages resulting from
such killing, the burden of proving that there was no negligence
on its part.

"Proof that there was a live wire carrying a deadly current
of electricity down in the public streets raises the presumption
that some one failed in his duty to the public.

330    CIRCUIT   COURT   REPORTS—NEW   SERIES.

Citizens Electric Railway, etc., Co. v. Bell.    [Vol. V, N. S.

"Electric corporations permitted to use the public streets for their own purposes must be required to exercise the utmost degree of care in the construction, inspection, and repair of their wires and poles, to the end that travellers along the highway may not be injured by their appliances."

In the case of *Snyder* v. *Wheeling Electric Co.*, 43 W. Va., 661 (64 Am. St. Rep., 922; 39 L. R. A., 499), the court in the syllabus uses this language:

"There must be reasonable evidence of negligence; but where the thing is shown under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen, if those who have the management use proper care, it afford reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.

"A high, if not the highest, degree of care is exacted of operators of electricty, and, if a wire, charged with a deadly current of electricity, falls from its proper place of elevation above the street to the surface of the street, and there, by contact with a man lawfully passing along the highway, kills him with its current, the law raises a *prima facie* case of negligence. This presumption, however, is by no means final or conclusive, but may, in the absence of specific neglect connected with the incident, be repelled by evidence of a uniformly careful, prudent management, commensurate with the dangerous character of the wire, and adequate to the safety of the public."

Brannon, J., on page 664, says:

"Suppose there is no evidence of negligence on the part of the defendant, does the mere fact that the wire fell create a *prima facie* presumption of negligence, sufficient, in the absence of something appearing in the case to repeal that presumption, to supoprt the action?    This involves the rule of principle of *res ipsa loquitor*—the thing itself speaks.    A wire charged with a deadly current of electricity falls from its proper place of elevation above the street to the surface of the street, and there, by contact with a man lawfully passing along the highway, kills him with its current.    Are we to presume that its fall came from some negligence of the owner, unless the circumstances of the case or facts shown by him shall show that its fall is not attributable to his negligence, but from some defect which that reasonable care and prudence proper in the case of such deadly wire was unable to discover, or some accident beyond his con-

trol; in other words, from inevitable accident? I answer that the law raises a *prima facie* case of negligence."

In 2 Jaggard on Torts, page 864, the author says:

"A live wire is exceedingly dangerous, so that proof of contact therewith, and consequent damages makes it a complete case of *prima facie* negligence and throws the burden on the defendant to show that such wire was in the street without fault on his part. Generally companies using electricity on lines along a street are charged with the highest degree of care, having due reference to the existing knowledge in the construction, inspection and repair of their wires and poles, and in the use of devices to guard against harm."

Other authorities in harmony with the above are *Ry. Co.* v. *Webb,* 12 O. St., 475, 496; *Ry. Co.* v. *Shields,* 47 O. St., 387; *The Western Union Tel. Co.* v. *State* (Nelson), 82 Md., 293; 31 L. R. A., 572; *Denver Consol. Electric Co.* v. *Simpson,* 21 Col., 371; 31 L. R. A., 566; *Western Union Tel. Co.* v. *Thorn,* 64 Fed. Rep., 287; 12 C. C. A., 104; *Leavenworth Coal Co.* v. *Ratchford,* 5 Kan. App., 150; 48 Pac. Rep., 927.

Such being the law applicable to the case at bar, we think the court charged it correctly, and it follows as a necessary sequence, that the court did not err in refusing defendant's request, wherein the court was requested to charge, first, "You are instructed to bring a verdict for defendant," and second, "If the court refuses to charge the foregoing, then the defendant requests the court to instruct the jury that the burden is on the plaintiff to prove that said wire was broken through which the current of electricity was carried from defendant's wire through and to the hand of said child, but moreover it must appear from the evidence that defendant company had knowledge of said broken wire and defective condition, and reasonable time had elapsed within which to repair the same."

3. It is contended that this child was guilty of contributory negligence. It will not be necessary to spend time on this question. It is conceded that the age of the child was seven years, which brings the case clearly within the rule laid down by our Supreme Court in the case of *L. E. & W. R. Co.* v. *McKey,* 53 O. St., 370, wherein the court held that "a child of nine years

of age is not guilty of negligence if he exercises that degree of care which under like circumstances would reasonably be expected from one of his years and intelligence," and that "whether he used such care in a particular case is a question for the jury."

We find no error in the record and the judgment is affirmed. Judgment affirmed.

*Cummings, McBride & Wolfe,* for plaintiff in error.
*Douglass & Mengert,* for defendant in error.