Hoggatt *v.* The Evansville and Terre Haute Railroad Company.

Filed Jan. 22, 1892.

---

No. 423.

## HOGGATT *v.* THE EVANSVILLE AND TERRE HAUTE RAILROAD COMPANY.

RAILROADS.—*Contributory Negligence.*—*Injury to Team.*—*Obstruction of Highway.*—Where a railroad company constructed its track upon a highway, digging an excavation in the highway, and piling the dirt from said excavation along the sides thereof, making an embankment, so as to entirely obstruct the view of travellers along the highway, and an engineer, approaching at an unusual hour, omitted to give the statutory signals in time so that a boy fifteen years of age driving along the road might take his horses to a safe distance, and the horses became frightened and ran away, the driver was not guilty of contributory negligence, although he did not stop and listen, and although he knew the horses were afraid of the cars.

SAME.—*Obstruction of Highway by Company.*—*Liability of Company for Accidents.*—Where a railroad company has rendered the use of a highway unsafe in violation of statute, it is bound in operating its railroad to exercise proper care to prevent the injury of a person placed in danger by that wrong, in his lawful use of the highway.

SPECIAL FINDINGS.—*General Verdict.*—*Conflict Between.*—If, considering special findings together, and in connection with any supposable evidence admissible under the issues, they are not wholly inconsistent with the conclusion involved in the general verdict, the latter must stand.

From the Sullivan Circuit Court.

*J. S. Bays,* for appellant.

*J. E. Iglehart, E. Taylor, J. T. Hays* and *H. J. Hays,* for appellee.

BLACK, J.—The appellant's complaint showed that there

were two certain highways in Sullivan county, running north and south, at the distance of one-fourth of a mile apart; that from the eastern one of said highways to the western one, and thence westward, ran a third highway; that the appellee constructed a line of railroad across, along, and upon said third highway for the distance of three-fourths of a mile from said eastern highway, and unlawfully, carelessly and negligently failed to construct said railroad so as not to interfere with the free use of the highway, and so as to afford security for property, in this, that it dug an excavation some six feet deep and fifteen feet wide in said highway, for a distance of over one hundred and fifty yards, and piled the dirt from said excavation along the sides thereof, making an embankment some eight feet high for said distance of one hundred and fifty yards, leaving no way for travellers to pass along said highway except upon said embankment, and permitted undergrowth and trees to remain in such position and manner as entirely to obstruct the view along the highway; that the appellee unlawfully, carelessly and negligently failed to restore said highway to its former state, or so as not to impair its usefulness unnecessarily or to injure its franchises, but left it in a narrow and dangerous condition.

It was alleged that after this appropriation of the highway, and at the time of the grievance hereinafter mentioned, the highway so appropriated was generally used as a highway by all persons travelling in vehicles or otherwise, and was a public highway, and was used as such by the travelling public; that on, etc., the appellant's team of two horses, with a wagon, was being driven lawfully and carefully along said highway so impaired, going west thereon about fifty-five or sixty rods east of said west highway; that while said horses were so being driven, the appellee's agents, servants and employees approached along said railroad running parallel with said highway, going east, with a locomotive and caboose attached; that, when said locomotive and caboose were so coming east, they could not be seen by the driver of said team in

time to get said team out of the way of said locomotive and caboose, by reason of the bank thrown up as aforesaid and a clump of trees permitted to remain along said highway; that as said locomotive and caboose were approaching said west highway, the agents, servants and employees of appellee having said locomotive in charge, and operating it, carelessly and negligently failed and neglected to sound the whistle attached to said locomotive, at a distance of eighty to one hundred rods from said crossing, as required by the laws of Indiana; that they also carelessly and negligently neglected to ring the bell of said locomotive at said time, or any other time, while so passing said crossing; that by reason of said negligent acts of the appellee and its agents and employees the driver of said team was not warned of the approach of said locomotive and caboose until they were but two hundred feet from said team; that, by reason of appellee's said failure to restore said highway, said driver was unable to leave the highway upon which he was travelling with said team, so as to prevent said horses from becoming frightened at said locomotive and caboose; that said locomotive and caboose were not running on regular time, but passed said place at a time unusual for the passing of trains along said railroad; that the appellant and said driver had not knowledge that said locomotive and caboose, or train of any kind, would pass said point at or near said time; that as said locomotive and caboose approached said place where said team was being driven, said horses, without any fault or negligence of the appellant or said driver, became frightened at said locomotive and caboose to such an extent that they became unmanageable, and, without any fault or negligence of the appellant or said driver, said team ran away from said driver, and greatly injured said horses and broke up and ruined the harness and wagon, without the negligence of the appellant or said driver, etc.

There was an answer in denial, and upon the trial of the issue there was a general verdict for the appellant for one

hundred and seventy-five dollars. With the general verdict the jury returned answers to interrogatories.

The court sustained the appellee's motion for judgment in its favor upon the answers to interrogatories.

The interrogatories, with their answers, were as follows:

" 1. Was Otis Hoggatt in charge of plaintiff's team at the time of the injury complained of? Yes.

" 2. Was he, the said Otis Hoggatt, in charge of said team with the plaintiff's knowledge, and under plaintiff's direction at that time? Yes.

" 3. Is the said Otis Hoggatt the plaintiff's son? Yes.

" 4. Did the plaintiff's team become frightened at defendant's train of cars so as to cause them to run away at the time complained of? Yes.

" 5. Was the team afraid of the cars? Yes.

" 6. Did plaintiff and Otis Hoggatt know that said team would scare at the cars? Yes.

" 7. How close could said team be driven to the cars with safety? Thirty yards.

" 8. Was said team, or either of said horses, in the habit of running off? Yes, one of them.

" 9. Had either of said horses ever run off before, and if so about how often? Yes, two or three times.

" 10. Did said Otis Hoggatt know that said team or either of said horses would run off? Yes, one of them.

" 11. Was the plaintiff and his son, Otis Hoggatt, familiar with the condition of the highway and its relative location with the railroad track, and the condition of said highway along that east and west road where the alleged injury occurred? Yes.

" 12. Was plaintiff and his son, Otis, familiar with the number of trains that usually passed along that place each day? Yes.

" 13. Did the plaintiff send his son on the errand in question with a knowledge that he would probably pass along this highway? Yes.

" 14. At the time the plaintiff sent his son on this trip, did he know that the usual number of trains had not yet passed along that day, and that there was still another train liable to pass that place that day? Yes.

" 15. Was that train overdue at the time plaintiff's son was sent on said errand? Yes.

" 16. Was the team going west and the train going east at the time they met and the team ran off? Yes.

" 17. Did Otis Hoggatt start west along the highway that runs alongside of the railroad track for a distance of 114 rods and within twenty feet of it without stopping to listen for a train? Yes.

" 18. Did he continue until he came within 80 yards of said train without stopping his wagon to listen for a train? Yes.

" 19. Did he travel west on said road within 20 feet of the railroad track, talking with his little brother, and until he came within 80 yards of the cars, without making any special effort to ascertain whether he would meet a train or not, and, if he did, state what effort he made? He did.

" 20. Was the age of Otis Hoggatt 15 in November, 1890? Yes."

The jury in the general verdict found that the appellant's team was injured by reason of the appellee's negligence, as alleged in the complaint. Thus far the special findings do not antagonize the general verdict.

The jury in the general verdict also found that the appellant was without such fault as could bar his recovery; that he did not contribute directly to the injury by his own negligence.

If, not indulging any presumption in aid of the answers to interrogatories, but considering the special findings together and in connection with any supposable evidence admissible under the issue, they are not wholly irreconcilable with the conclusion involved in the general verdict that the appellant was not chargeable with contributory negligence, the court

Hoggatt *v.* The Evansville and Terre Haute Railroad Company.

erred in permitting the special findings to control. If there be such irreconcilability there was no error. Our examination is restricted to the question of contributory negligence.

Do the facts specially found, notwithstanding any and all additional facts that were provable, constitute negligence in law on the part of the appellant?

The question of negligence is, in general, one which should be left to the jury, under proper instructions from the court. It appears from the record that the court instructed the jury.

Applying the law, as stated in the instructions, to all the facts found under the evidence, the jury decided the question of contributory negligence in favor of the appellant. The court then decided the same question against the appellant, upon the particular facts found in answer to interrogatories.

The instances are comparatively few in which the question can be taken from the jury, and it can be decided by the court that there was contributory negligence of the plaintiff.

If the standard of duty applicable to the particular facts be not ascertained and fixed by law, and it be not clearly manifest what course a person of ordinary prudence would take under the circumstances, and different persons seeking to solve the question may reach different conclusions honestly, the question should be left to the jury.

"The question of contributory negligence is generally one for the jury, and courts interfere with the verdict only in clear cases." *Terre Haute, etc., R. R. Co.* v. *Buck,* 96 Ind. 346 (359); *Indianapolis, etc., R. R. Co.* v. *Stout,* 53 Ind. 143; *Pennsylvania Co.* v. *Hensil,* 70 Ind. 569 (575); *Stevens* v. *City of Logansport,* 76 Ind. 498; *Shoner* v. *Pennsylvania Co.* (Ind. Sup.), 28 N. E. Rep. 616.

The appellant's driver was pursuing his journey upon a public highway. He was lawfully there. It may be said that he took a risk, but he did not go to the perilous situation knowing that he would there be in peril. Knowledge of danger does not always defeat recovery for negligence.

*Evansville, etc., R. R. Co.* v. *Carvener,* 113 Ind. 51; *Evansville, etc., R. R. Co.* v. *Crist,* 116 Ind. 446; *Ohio, etc.,R. W. Co.* v. *Trowbridge,* 126 Ind. 391.

The danger was dependent upon contingencies. The team could be driven as near as thirty yards from the cars with safety. The appellee, having rendered the use of the highway unsafe in violation of the statute (section 3903, R. S.1881, cl. 5), was bound in operating its railroad to exercise proper care to prevent the injury of a person placed in danger by that wrong, in his lawful use of the highway. *Evansville, etc., R. R. Co.* v. *Crist, supra.*

In considering the question whether the appellant was negligent, it must be admitted that he could not be expected to abandon his right to use the public highway for fear the appellee would not do its duty in this regard, and would not exercise ordinary care to give needful warning to travellers on the highway along which it had so constructed its track.

The evidence may have shown, and in the decision of the question before us under the motion for judgment it must be presumed that it did show, that the driver could have driven the team out of danger at any point on the journey before reaching the place where the injury occurred.

Undoubtedly the appellant and his driver were bound to exercise ordinary care to avoid injury; but if the rule of law as to the precaution of looking and listening, to be taken by a traveller about to cross a railroad track upon a public highway, were applicable to the case in hand (*Evansville, etc., R. R. Co.* v. *Crist, supra*), there is no rule of law requiring a person approaching a railroad crossing with a team to stop still. *Terre Haute, etc., R. R. Co.* v. *Clark,* 73 Ind. 168; *Pittsburgh, etc., R. W. Co.* v. *Martin,* 82 Ind. 476; *Baltimore, etc., R. R. Co.* v. *Walborn,* 127 Ind. 142; *Miller* v. *Louisville, etc., R. W. Co.,* 128 Ind. 97 (101); *Mann* v. *Belt R. R., etc., Co.,* 128 Ind. 138 (144).

If the driver's failure to stop, when by doing so he could have heard the train in time to escape, would have been neg-

ligence, it does not appear that by stopping he could have heard the approaching train.

How often would it have been necessary to stop in order to escape the imputation of negligence for failure to stop? What place or places in the journey could be said to be points at which he must have stopped in the exercise of ordinary care?

It can not be said by the court as a matter of law that by failing to stop to listen, as indicated in the special findings, he directly contributed to the injury through want of ordinary care.

The fact that he made no special effort to ascertain whether he would meet a train or not is not inconsistent with proof that he looked and listened for a train, or that he made some effort, which, though it was not special, and did not include the stopping of the team to listen, was an effort which the jury could find to have been such as an ordinarily prudent person would make under the circumstances shown by the evidence.

The special findings do not present a case of a person voluntarily encountering an obvious danger, but rather, when considered in connection with provable facts, make a case proper for the consideration of the jury for the purpose of determining, under the instructions of the court, whether the appellant and his driver acted with ordinary care.

The judgment is reversed, and the cause is remanded, with instruction to render judgment upon the general verdict.

Filed Jan. 21, 1892.