TEMPLE ELECTRIC LIGHT CO. v. HALLIBURTON.†

(Court of Civil Appeals of Texas. March 22, 1911. On Motion for Rehearing, April 19, 1911.)

1. CONTRIBUTION (§ 5*)—TORT-FEASORS.

As a general rule, there is no contribution between joint tort-feasors; but there are exceptions, especially in cases of negligence.

[Ed. Note.—For other cases, see Contribution, Cent. Dig. §§ 6–9; Dec. Dig. § 5.*]

2. CONTINUANCE (§ 11*)—DEFECT OF PARTIES.

Where defendant made no effort prior to a motion at the trial to have a joint tort-feasor made a party defendant, and such party was not a necessary party, and to have granted the motion would have delayed plaintiff's case, a motion to continue for that purpose is not well taken.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 22; Dec. Dig. § 11.*]

3. DISMISSAL AND NONSUIT (§ 26*)—JOINT TORT-FEASORS.

Where plaintiff had brought her action against two joint tort-feasors, she had the right at any time to dismiss as to either, and his codefendant cannot complain of such dismissal, because it is chargeable with the knowledge of such right of the plaintiff, especially where no service had been had against the codefendant, and could have taken affirmative action to make him a party.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 46–59; Dec. Dig. § 26.*]

4. ELECTRICITY (§ 19*) — NEGLIGENCE — EVIDENCE.

In an action for death from shock in coming in contact with a charged telephone wire, evidence *held* sufficient to raise the issue of negligence on the part of the defendant electric light company in stringing and maintaining its wires too near those of the telephone company, as well as in failing to securely fasten them to the poles.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 19.*]

5. ELECTRICITY (§ 18*)—CONTRIBUTORY NEGLIGENCE.

Where plaintiff's decedent came home, and, after ascertaining that there was trouble with the telephone, used it and received a slight shock, and discovered that the wire was emitting sparks, and took pliers to cut the wire, and he was stricken with a current of electricity which caused his death in a few minutes, it cannot be said that he unnecessarily brought himself in contact with a sparking wire, as what he did at the time seemed necessary for the preservation of his home from fire, especially where he believed that he was in no danger.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 10; Dec. Dig. § 18.*]

6. ELECTRICITY (§ 19*)—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

In an action for death from shock from electric light wire, evidence *held* that the question of contributory negligence was for the jury.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 19.*]

7. ELECTRICITY (§ 19*) — INJURIES — ASSUMED RISK.

In an action for death from shock from electric light wire, *held*, that the doctrine of assumed risk was not presented.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 19.*]

8. ELECTRICITY (§ 19*) — ACTIONS — INSTRUCTION—PROXIMATE CAUSE.

In an action for death from shock from a telephone wire with which an electric wire had come in contact, the refusal of an instruction on the law of proximate cause requested by defendant electric light company was not erroneous where the court in its main charge correctly defined "proximate cause," and further told the jury that the defendant was in no wise responsible for the negligence of the telephone company, and unless they found that the electric light company was guilty of negligence in the construction and maintenance of its wires, and that such negligence was the direct and proximate cause of the injury, their verdict must be for the defendant.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 19.*]

9. CORPORATIONS (§ 428*) — KNOWLEDGE OF SERVANT—NOTICE TO MASTER,

Knowledge on the part of the employés of an electric light company who placed the poles and wires of said company along an alley of any defective condition of the poles or wires of a telephone company in the same alley, or defective manner in which the telephone company had placed their phone in decedent's house, was knowledge of the defendant light company.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1748–1761; Dec. Dig. § 428.*]

10. ELECTRICITY (§ 19*)—ACTIONS—INSTRUCTIONS—PROXIMATE CAUSE.

In an action for death from shock from electric light wire, it was not error to refuse defendant's requested charge that "the plaintiffs are confined in their recovery to the allegations in the petition, and accordingly, if you find that the coming in contact with the wires of the light company and the telephone company was not due to the light company's using and maintaining a very dangerous and inferior wire at the place, insufficiently insulated and fastened to the pole, which caused the same to sag or fall across and too close to the telephone company's wire, you will find for the defendant," as it required the jury, before it could find for the plaintiff, to believe that defendant was negligent in each of the respects charged in the petition.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 19.*]

11. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—MISLEADING INSTRUCTIONS.

An instruction that contributory negligence means such act or omission on the part of "plaintiff" as an ordinarily prudent person would not do, etc., was not misleading where the words used should have been "plaintiff's decedent," or some equivalent; and the error, if any, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4221–4224; Dec. Dig. § 1064.*]

12. ELECTRICITY (§ 19*)—ACTIONS—INSTRUCTIONS—PROXIMATE CAUSE.

An instruction that it was the duty of an electric light company to exercise ordinary care in constructing and maintaining its poles and wires, and, if it failed to exercise such care as a person of ordinary prudence would do under similar circumstances, and injuries resulted, the same would be negligence, was not errone-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

ous as stating that the doing of a certain act would be negligence.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 19.*]

13. DEATH (§ 99*)—EXCESSIVE DAMAGES.

In an action for injuries causing death, where deceased was in the prime of life, earning in the neighborhood of $1,000 to $1,200 a year, and he was vigorous and active, and in good health, and his earnings were used in the support of his family, a verdict for $14,000 was not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

14. ELECTRICITY (§ 19*)—INJURIES FROM DEFECTIVE WIRE—EVIDENCE.

In an action for death from shock from electric light wire, an objection to testimony as to finding defendant's electric light wire off the insulator, and lying on the cross-arm of the pole on the morning after the accident, where the witnesses examined the wire early the next morning, and there was no change shown in its condition from the previous night, goes only to the weight, and not the competency, of the evidence.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 19.*]

On Rehearing.

15. TRIAL (§ 251*)—INSTRUCTIONS—REFUSAL.

Where matters in a special instruction requested were not pleaded by plaintiff as negligence on the part of the defendant, an instruction in regard thereto was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

Appeal from District Court, Bell County; John D. Robinson, Judge.

Action by Mrs. Minnie Halliburton against the Temple Electric Light Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Harry P. Lawther, W. S. Banks, and W. O. Cox, for appellant. A. L. Curtis and Winbourn Pearce, for appellee.

RICE, J. On the night of November 29, 1909, in the city of Temple, Geo. W. Halliburton, while attempting to cut a telephone wire running into his house, and which was heavily charged with electricity on account of having come in contact with the wire of the Temple Electric Light Company, was struck and killed by a current of electricity; and his widow, Mrs. Minnie Halliburton, for herself and as next friend for her four minor children, brought this suit against appellant and the Bell County Telephone Company to recover damages therefor.

It was alleged that both the light and phone companies maintained and operated their wires over the streets and alleys of said city, each charged with dangerous and deadly currents of electricity; that the deceased, through contract with the phone company, had installed a telephone in his home. The negligence alleged against the light company consisted in using and maintaining inferior and dangerous wires, insufficiently insulated and fastened to the poles, whereby they were caused to sag and fall across the wire of the telephone company, thereby charging the same with deadly currents of electricity, and in negligently stringing its wires too close to those of the telephone company, as well as not sufficiently tamping, staying, bracing, and guying its posts, and that the telephone company was negligent in maintaining its wires in such loose and careless manner, and in such close proximity to the dangerous and deadly wires of the light company, that the defendants knew, or in the exercise of ordinary care and proper inspection could have known, of the defective and dangerous condition and position of said wires; but, notwithstanding its duty in that behalf, it negligently and carelessly failed and refused to remedy or repair the same. The telephone company failed to answer, but the light company answered by general demurrer, general denial, and by special plea, denying that its wires were inferior or insufficiently insulated by reason of which they sagged and came in contact with the telephone wire, and specially denied that they were placed in too close proximity to said telephone wires, and alleged that its wires were triple braided, weather proof, insulated, standard wires, tightly strung on new sound poles, securely fastened in the ground, etc. And further answered by plea of contributory negligence and assumed risk, and also by cross-action, alleging negligent construction and maintenance of the telephone wires, but for which the accident would not have occurred, and sought to recover judgment against the telephone company in the event plaintiff obtained judgment against it. There was a jury trial resulting in a verdict and judgment in favor of plaintiff in the sum of $14,000.

The principal reasons urged for reversal, both in the brief and argument on hearing, were, first, that the court erred in refusing to grant appellant a continuance to make the telephone company a party; second, that the court erred in not sustaining the motion of appellant to instruct a verdict (a) on the ground that no liability was shown against the defendant, (b) on the ground that deceased was guilty of contributory negligence; third, that the court erred in certain paragraphs of its main charge to the jury; and, fourth, that the court erred in refusing to give certain special instructions requested by appellant, and that the verdict was excessive, all of which will be discussed in the order presented.

[1, 2] When the case was called for trial on the 9th day of February, it appeared that the telephone company had not been served with citation, the party upon whom service was had having on the 3d day of January made affidavit setting up the fact that he was not the agent of the company sued. Whereupon the plaintiff dismissed her suit as to the telephone company, and elected to proceed alone against appellant. Thereupon the

latter moved the court to grant it a continuance for the purpose of making the telephone company a party defendant. This was refused, and the action of the court in this respect is assigned as error. As a general rule, there is no contribution between joint tortfeasors, but there are exceptions to the rule which permit it, especially in cases of negligence; and, without undertaking to determine whether appellant by its pleading brings itself in the present case within any of the exceptions to the rule, we think that the motion to continue was properly overruled, because appellant had made no effort, prior to this time, to make the telephone company a party defendant. The telephone company was not a necessary party to this suit, and to have granted the motion would have delayed plaintiff's suit. Therefore we think that without a showing of diligence on the part of appellant to make the telephone company a party this motion to continue was not well taken. It has been held that, while a sheriff may have his indemnity bondsmen made parties, he must do this in ample time, so as not to delay the case against himself. See Stiles v. Hill, Fontaine & Co., 62 Tex. 429. In Kirby v. Estill, 75 Tex. 484, 12 S. W. 807, it is held that, while a defendant may have his warrantor brought in, the same cannot be done at such time or in such manner as to unreasonably delay the trial of the case.

In the case of City of San Antonio v. Talerico, 98 Tex. 156, 81 S. W. 520, where the suit was brought on account of the default of another, against whom the city might properly have had a cause of action, it was said: "According to the strict rules of the common law, it (the city) could not have brought any other party into this litigation, and could maintain no independent action until the suit had terminated by judgment or it had paid the damages to plaintiff. It is permitted by our laws to bring into the suit against it the party whom it seeks to hold liable as indemnitor, in order that protection may be given to it by the same judgment that fixes its liability. In bringing in another party, it has no right to delay the suit of the plaintiff, to which such other party is not essential, and it is not at all necessary that the plaintiff's rights should be further involved in the litigation between the two defendants."

[3] We see no reason why the rule above announced will not apply in the case at bar. Notwithstanding the fact that the plaintiff in this suit had brought her action against both defendants, still we think she had the right at any time to dismiss either and proceed against the other, even though service may have been perfected as against the one dismissed; and the other party, it seems to us, would have no just grounds of complaint, since it had failed to take affirmative action in due time to bring its codefendant into the case, because it must be held chargeable with the knowledge of plaintiff's right to so dismiss the proceedings, especially where no service had been obtained against its codefendant, for which reasons we overrule this assignment.

Upon the close of plaintiff's evidence in chief, appellant moved the court to instruct a verdict in its favor, on the ground that there was nothing in the evidence showing, or tending to show, that it was guilty of any negligence in causing the death of the deceased, either in the quality, character, or kind of its equipment, use and maintenance thereof. While it is true that the evidence showed that appellant had recently erected its poles, that the same were new, sound, and firmly placed in the ground, that its wires were of the best in use and were properly strung, yet it is shown that at the time these poles were erected and wires strung the telephone company had its service or drop wire running from a post on the east side of the alley into the house of the deceased, and had been for some months prior thereto so maintaining it, and that the light company erected its poles and strung its wires on the west side of the alley and across this drop or service wire of the telephone company. There was testimony on the part of the plaintiff that these wires of the light company were within six inches of the telephone wire, and that it is not safe to place such wires so close to each other. It was further shown that the light company's wire on the night in question had come loose from the knob on the cross-arms and had fallen upon or across the telephone wire, and it further appeared that, if it had been properly fastened, this would not likely have occurred; that at the point of contact a hole was made in the insulation of the light wire, whereby the telephone wire became charged with electricity. The telephone wire ordinarily carried a voltage of only about 40, while the light company's wire usually carried a voltage of about 2,250. On the night in question the wind was blowing strongly from the northwest, and it had been raining and the ground was flooded with water. The deceased came home about 7:30 p. m.; and it seems that there had been trouble with the phone during the day, and he had been unable to communicate with his wife. Upon his arrival, after ascertaining that his wife had tried to get him over the phone and had failed to do so, he went to the phone for the purpose of seeing whether it was all right. Receiving a slight shock, he hung up the receiver, saying that there must be something wrong with the wire under the house, and went outside to see about it. He immediately returned, saying that the wire would set the house on fire. It was then emitting sparks, and he took up the pliers and went out, remarking that he would cut the wire. His wife remonstrated with him, but he replied that there was no danger and immediately

made an effort to cut the wire, whereupon he was stricken by a current of electricity, and in a few moments died.

[4] We think this evidence was sufficient to raise the issue of negligence on the part of appellant in stringing and maintaining its wires too near those of the telephone company, as well as in failing to securely fasten them upon the poles, for which reason we believe that the court did not err in overruling the motion, but properly submitted the case to the jury, and therefore overrule the second assignment of error presenting this question.

[5] By its third assignment appellant insists that the court erred in refusing to instruct a verdict in its behalf on the ground that deceased was shown to have been guilty of contributory negligence as a matter of law, and this question is not without difficulty. Appellee insists that the question of contributory negligence is one of fact for the jury, if there are inferences to be drawn from the proof which are not certain and incontrovertible, or if it is necessary to determine what a man of ordinary care and prudence would be likely to do under the same circumstances and in the same emergency. In addition to what has been said under the preceding assignment, it may be added that deceased was shown to be a man of average intelligence. It was not shown that he knew that the telephone wire and the light wire were so constructed as to be in dangerous proximity to each other, nor did he know at the time he undertook to cut the phone wire that the same was in contact with the light wire. He was not using electric lights in his house, and therefore no electric light wire came into the house. It is clear that he was under the impression at the time that he undertook to cut the wire that there was no danger in so doing, because, in reply to his wife's admonition, he stated that there was no danger. Besides this, he was acting hastily under the spur of the moment, with the evident purpose of protecting the house from fire, because he could see that sparks were being emitted from the wire, and this seems to have impressed him with the idea of danger to his house. It appears that he was standing in water at the time that he undertook to cut the wire; and, while there is some proof on the part of defendant showing that the deceased during that day had been cautioned as to the danger of electricity, still it is not shown that he knew that the pliers were a good conductor, or that the wet ground was also a good conductor, and would make it more dangerous for him to undertake to cut the wire under the circumstances. The deceased was a barber, had never worked for any electric company, and had never had any experience with electricity. On this subject the court charged the jury as follows: "You are instructed that it is the duty of every person to exercise ordinary care for his own safety, and to avoid known dangers, or those of which, by the use of ordinary care, he could have known; and so in this case, if you believe that G. W. Halliburton cut or attempted to cut a telephone wire attached to his residence, and that at the time of so doing he knew, or by the exercise of ordinary care could have known that such act was attended with danger to himself, he would in law be deemed to have negligently contributed to his death, and your verdict should be for the defendant, although you might find the defendant to be guilty of negligence."

In the case at bar it seems that the question of negligence vel non, under the circumstances, was not one of law, but one of fact for the determination of the jury. The cases are rare in which, as shown by the authorities, courts have held that contributory negligence was a matter of law. In the case of Railway Co. v. Gasscamp, 69 Tex. 545, 7 S. W. 227, Chief Justice Gaines, treating this subject, says: "The issue of contributory negligence was submitted to the jury, and has by the verdict been determined in plaintiff's favor. This is conclusive of the question unless we can say that the act of the plaintiff was negligent in law, or, at least, that it tended so strongly to establish negligence on his part that the verdict should not be permitted to stand. According to the rule in this court, in order that an act shall be deemed negligent per se, it should be done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it." This case has been often approved, both by our own courts and text-writers, and is a recognized doctrine in Texas. The same principle is announced by Justice Williams in the case of Mills v. Railway, 94 Tex. 242, 59 S. W. 874, 55 L. R. A. 497, wherein he says, discussing the subject of contributory negligence: "The question must be whether or not, under the peculiar circumstances of the case, which are rarely if ever the same in two cases, it was negligence to make the attempt; and, except in cases where the evidence is so clear as to admit of but one answer to a rational mind, the question must be left to the jury." See, also, Currie v. M., K. & T. Ry. Co.. 101 Tex. 478, 108 S. W. 1167.

In the case of Griffin v. Light Co., 164 Mass. 492, 41 N. E. 675, 32 L. R. A. 400, 49 Am. St. Rep. 477, Justice Lathrop of the Supreme Judicial Court of Massachusetts, discussing the question of the plaintiff's contributory negligence, said: "We are of the opinion that there was evidence for the jury that the plaintiff was in the exercise of due care. The jury might well have found on the evidence that the injury was caused by the pipes coming in contact with a place on

the wire where the insulating material had become worn off. It cannot be said as matter of law that this condition was so apparent to the plaintiff that he must have seen it, or ought to have seen it, although the accident happened in the forenoon. While an expert may consider it dangerous to touch any wire, unless he knows it to be a harmless one, there was evidence that plaintiff was not an expert and did not know that an electric light wire would do any hurt, or that the electric light wires ran on the sides of buildings. The question of his due care was for the jury." In Hoggatt v. Railway Co., 3 Ind. App. 437, 29 N. E. 941, it is said that: "The circumstances are comparatively few in which the question (speaking of contributory negligence) can be taken from the jury, and it can be decided by the court that there was contributory negligence of the plaintiff. If the standard of duty applicable to the particular facts be not ascertained and fixed by law, and it be not clearly manifest what course a person of ordinary prudence would take under the circumstances, and different persons seeking to solve the question may reach different conclusions honestly, the question should be left to the jury." The Supreme Court of Indiana, in the case of Railway Co. v. Harrington, 131 Ind. 426, 30 N. E. 37, says: "In practice it often occurs that the facts and circumstances surrounding a particular case are such as to warrant different inferences; so that one impartial, sensible man may draw the inference and conclusion that the injured party was guilty of negligence, while another man, equally impartial and sensible, might draw a different conclusion. In such cases the courts will not adjudge the question of negligence, but will leave it to the jury under proper instructions." In discussing the question of contributory negligence, as applicable to the law of electricity, in 15 Cyc. p. 475, it is said, as in other cases of negligence, "contributory negligence on the part of plaintiff in an action for injury done by electricity precludes a recovery. Thus one who has notice of the dangerous condition of a wire or other electric appliance and voluntarily brings himself in contact with it cannot hold the company for the resulting injuries. To give rise to this defense, however, it must be shown that plaintiff in coming in contact with the appliances voluntarily and unnecessarily exposed himself to danger; and, if reasonable men might honestly differ on the question, the court will not hold plaintiff guilty of contributory negligence as matter of law."

Now in this case, while it may be conceded that the deceased voluntarily brought himself in contact with a sparking wire, it seems to us that it cannot be held that he unnecessarily did so, for the reason that the proof shows that the wire was attached to the house, was emitting sparks, and the deceased acted quickly for the protection of his property in his attempt to cut the wire. What he did at the time and under the circumstances seemed necessary to him for the preservation of his home. It therefore cannot be said that he unnecessarily exposed himself to danger. He had the right, it seems to us, and it became his duty, to protect his property from apparent danger, especially where it appears that he at the time of undertaking to do so believed that he was in no danger.

In the case of Coal Co. v. Ratchford, 5 Kan. App. 150, 48 Pac. 927, where the plaintiff in attempting to remove a sparking electric light wire from his barn with a baseball bat because he thought the same was about to set fire to the building was injured, it was said, as shown by the syllabus, "that the fact that a live wire is emitting sparks and a blaze of electric light, apparently jeopardizing the buildings of the plaintiff, will not of itself preclude the plaintiff from attempting, using ordinary prudence, to remove such wire for the purpose of relieving his property from apparent danger and conflagration, and such an attempt made by the plaintiff will not be held as matter of law contributory negligence." In Dillon v. Allegheny County Light Co., 179 Pa. 482, 36 Atl. 164, where a policeman on duty in a rainy night attempted with his mace to remove from a street on his beat a broken wire hanging from a pole, with a knowledge that the same was charged with electricity, and he was injured, it was held that he was not necessarily guilty of contributory negligence, and that the question was one, not of law, but of fact. Where a mother voluntarily took hold of her child in an endeavor to remove him from contact with a live electric wire, and was thereby injured, it was held that she was not negligent, whether she was aware of the danger or not. Walters v. Denver Consolidated Electric Light Co., 12 Colo. App. 145, 54 Pac. 960. See, also, I. & G. N. R. R. Co. v. McVey, 81 S. W. 991, where the same doctrine is announced.

In volume 1, Mr. Thompson in his Commentary on the Law of Negligence, § 188, treating the doctrine here under discussion, says: "Mere knowledge that a danger exists does not in all cases impute negligence to a person who voluntarily encounters it. He may be under necessity of proceeding, and the case may be such that a person exercising ordinary care might suppose that he could successfully encounter it. We shall see frequent illustrations of this principle in the case where travelers are injured through known defects in a highway, bridge, or sidewalk." "Again, the exigency of the particular case may justify a person in thrusting himself into a danger where under ordinary circumstances his conduct would be justly deemed grossly negligent and reckless, as where he exposes himself to a known danger in an effort to save the life of another. Again, in a case of immediate

and sudden danger, not produced by the neglect of the party injured, but such as might overbear the judgment of a reasonably prudent man, a mistake made in casting himself upon a danger will not be imputed to him as contributory negligence, especially where the appearance of danger which overbore his faculties was produced by the negligence of the defendant. The true meaning of the rule, therefore, is that, in order to impute contributory negligence to a person exposing himself to a danger, he must (1) knowingly, or with negligent ignorance, (2) voluntarily, and (3) unnecessarily expose himself to it." Again, in section 199, the same author says: "One who acting with reasonable prudence voluntarily exposes himself to danger for the purpose of protecting the person of another may recover for the consequent injuries which he receives from the persons whose negligence or other wrong caused the injury to himself and the danger to the person whom he sought to rescue or aid. The same has been held to be true of one who under similar conditions is injured in an attempt to protect his own property"—citing Wasmer v. Delaware R. R. Co., 80 N. Y. 212, 36 Am. Rep. 608; Rexter v. Starin, 73 N. Y. 601. Further discussing this question, he says in section 429, same volume: "In the original edition of this work, the author said 'that where the facts are undisputed, or where but one reasonable inference can be drawn from them, the question is one of law for the court; but where the facts are left by the evidence in dispute, or where fair minds might draw different conclusions from them, it must go to the jury to resolve the dispute in the one case or to draw the inference in the other.' In using this language and in endeavoring to frame a comprehensive statement, the author threw two elements together which are now treated separately. Where the facts which speak upon the question of contributory negligence are controverted by the evidence, the jury must always resolve that controversy. But, where the facts which speak upon the question are undisputed or established, it will often happen that fair-minded men will differ as to the further deduction of fact—for, except where the law condemns the act or omission, it is a deduction of fact and not of law—involved in the inquiry whether in what the person did or omitted to do he exercised reasonable or ordinary care. Accordingly, we have the rule agreed to by many courts, and, so far as the author knows, disputed by none, that, although the facts from which the deduction of contributory negligence is or is not to be drawn are not in dispute, yet, where fair-minded men might draw different deductions from them as to whether they show negligence in the person injured, the question is to be submitted to the jury. It must be apparent that this rule in the concrete means no more or less than this: That, when the fair-minded man on the bench thinks he is better capable of deciding the question than the twelve fair-minded men in the jury box, he will decide it without taking their verdict upon it. There are different ways of stating the doctrine, but they all come back to the conclusion just stated: The judge will submit the question to the jury, where he, the judge, cannot positively say that the plaintiff was guilty of contributory negligence; or where there is any doubt upon the subject (that is to say, doubt in the mind of the trial judge, or in the minds of the judges of the court of appeal); or, stated negatively, the judge is not warranted in withdrawing the question from the jury, unless the proof of contributory negligence is so clear and decisive as not to leave room (in his opinion) for impartial and unbiased minds to arrive at any other conclusion."

[6] Under the rule announced by the authorities quoted, we are constrained to believe that the question of contributory negligence vel non in the case at bar, as above intimated, was properly one of fact to be determined by the jury, and that the able trial judge did not commit error in submitting it to them for their consideration, for which reason we overrule this assignment.

[7] It is urged by appellant in its fourth assignment that the court erred in refusing to instruct the jury upon the law of assumed risk, as requested by it. We do not believe that the facts of this case bring it within the doctrine of assumed risk, and therefore overrule this assignment.

[8] It is urged that the court erred in refusing to give appellant's special charge No. 2 upon the law of proximate cause, as requested by it. The court in its main charge in our judgment correctly defined proximate cause, and instructed the jury that the negligence of appellant must have been the proximate cause of the death of the deceased in order to warrant a verdict for plaintiff; and further told the jury that the defendant was in no wise responsible for the negligence of the telephone company, and that unless they found from the evidence that the electric light company was guilty of negligence in the construction and maintenance of its wires, and that such negligence was the direct and proximate cause of the injury, their verdict must be for the defendant. Besides this, the charge as requested ought not to have been given for the reason that it did not cover all of the facts of negligence alleged and proven, but only selected one act of negligence charged, and authorized a verdict for defendant upon this issue, in the event the jury should believe that appellant was not guilty of negligence in this respect, irrespective of whether it may have been guilty of negligence on the other issues alleged, and upon which proof was submitted; for which reason this assignment is overruled.

[9] Appellant requested the following special charge which was refused by the court,

to wit: "Gentlemen of the jury, in addition to the main charge, you are instructed that knowledge on the part of the employés of the light company who placed the poles and wires of said company along the alley in the rear of the Stegall Hotel of any defective condition of the poles or wires of the telephone company, or defective manner in which the telephone company had placed their phone in Halliburton's house (if you find that the same were defective, and you find that said employés of the light company had such knowledge), was not negligence on the part of the defendant light company, and you will not consider the same as such." This is made the basis of the sixth assignment; appellant contending by its proposition thereunder that the employés of the light company engaged in construction work were not such agents of the company as that notice to them would bind the company. The reverse of this contention has been decided by the Court of Civil Appeals of the Sixth District in the case of Jacksonville Ice & Electric Co. v. Moses, 134 S. W. 379, which we think is the correct doctrine upon this subject. See, also, Standard Light & Power Co. v. Muncey, 33 Tex. Civ. App. 416, 76 S. W. 931. We therefore overrule this assignment.

[10] The following charge requested by appellant was refused: "Gentlemen of the jury, in addition to the main charge, you are instructed that the plaintiffs are confined in their recovery to the allegations in their petition, and accordingly in this case, if you find from the evidence that the coming in contact of the wires of the light company and the telephone company was not due to the light company's using and maintaining a very dangerous and inferior wire at the place insufficiently insulated and insufficiently fastened to the poles which caused the same to sag or fall across and upon the wire of the telephone company, and by negligently stringing its wires at said place too close to the telephone company's wire, you will find for the defendant." We think this charge was properly refused, the vice in it being that it required the jury, before it could find for the plaintiff, to believe that appellant was negligent in each of the respects charged in the petition; while under the law it is clear that the jury could have found for the plaintiff, if they believed from the evidence that appellant was guilty of negligence in either or any of the respects charged against it. We therefore overrule this assignment.

[11] The court in its main charge gave the following: "Contributory negligence, as a law phrase, means such act or omission on the part of plaintiff as an ordinarily prudent person would not do or suffer to be done under the same or similar circumstances, which, concurring with the negligent act or omission of the defendant, becomes the proximate cause of an injury." It is objected that this charge uses the word "plaintiff," where it should have used "plaintiff's dece-

dent," or some equivalent expression. We think this objection is hypercritical, and the error, if any, harmless, because the jury must have understood that it referred, not to the negligence of the plaintiff herself, but to that of her deceased husband, for which reason the assignment presenting this question is overruled.

[12] The fifteenth assignment challenges the sixth paragraph of the court's charge, which is as follows: "It is the duty of an electric light company to exercise ordinary care and diligence in constructing and maintaining its poles and wires, and, if it fails to exercise such care and diligence in constructing and maintaining the same as a person of ordinary prudence would do under the same or similar circumstances, and injury thereby results, the same would be negligence and it would be liable." The basis of contention is that it is error for the court to say in its charge that the failure of a party to do a certain thing under certain conditions is negligence. The charge does not undertake to do this, but, on the contrary, gives a general rule upon the subject, applying the law correctly, as we think, for which reason this assignment is overruled.

[13] We are not prepared to say that the verdict in the present case is excessive. The proof showed that the deceased was in the prime of life, his earning capacity being somewhere in the neighborhood of $1,000 or $1,200 a year. He was vigorous and active, and in good health, and that his earnings were used in the support of his family.

[14] By the seventeenth assignment it is urged that the court erred in admitting the testimony of the witnesses Shutt, Wilson, and Berry as to finding defendant's electric light wire off the insulator and lying on the crossarm of the pole on the following morning after the accident. It is insisted by appellant that the condition of the light wire the morning after the accident was incompetent to show its condition at the time of the accident, and that such condition was due to the negligence of the light company. These witnesses examined the wire early the next morning, at which time there had been no change shown in its condition from the previous night. We think this objection was not tenable, and went more to the weight of the evidence than to its admissibility. See Jacksonville Ice & Electric Co. v. Moses, supra, where it was held competent for a witness to testify as to the condition of the wire several days after the accident. Besides this, appellant by its own witnesses had established the same fact as to the condition of the wire on said morning, for which reason it was in no position to complain. Hence we overrule this assignment.

The remaining assignments have all been considered by us, and are not regarded as well taken.

Believing that no reversible error has

been shown, the judgment of the court below is in all things affirmed.

Affirmed.

### On Motion for Rehearing.

Appellant in its motion for rehearing urgently insists, for various reasons, that this court has erred in its original opinion affirming this case. We only deem it necessary, however, to specially notice two of the matters discussed therein.

It is contended that we erred in overruling its fifteenth assignment, which complains of the action of the court in giving the following charge: "It is the duty of an electric light company to exercise ordinary care and diligence in constructing and maintaining its poles and wires, and if it fails to exercise such care and diligence in constructing and maintaining the same as a person of ordinary prudence would do under the same or similar circumstances, and injury thereby result, the same would be negligence and it would be liable." It is contended that this charge is error, on the theory that a court in its charge cannot state that the doing or the failure to do any particular thing is negligence, citing and discussing in support thereof the cases of H. & T. C. R. R. Co. v. Gaither, 35 S. W. 179; Campbell v. Trimble, 75 Tex. 270, 12 S. W. 863; Railway v. Robinson, 73 Tex. 284, 11 S. W. 327; I. & G. N. R. R. Co. v. Eason, 35 S. W. 209; Railway v. Wilson, 60 Tex. 143; Railway v. Wafer, 130 S. W. 713; Railway v. Murphy, 46 Tex. 356, 26 Am. Rep. 272.

It will be observed upon a review of the cases above mentioned, that the court in each of them violated the rule contended for in that it either told the jury that the doing of certain things, naming them, would be negligence, or the failure to do certain things, setting them out, would constitute negligence. The charge under consideration is not open to the objection urged, we think. It merely states in a general way that it is the duty of the light company to exercise ordinary care and diligence in constructing and maintaining its poles and wires, and states that if it fails to exercise such care and diligence in so constructing and maintaining the same as a person of ordinary prudence would do under the same or similar circumstances, and injury thereby results, the same would be negligence, etc. We think this case is clearly distinguishable from those called to our attention by appellant, in that it does not undertake to state that the doing of any particular acts, or the failure to do any particular thing in any particular manner or way, would constitute negligence; but merely gives a general definition of negligence as applicable to the case at bar, for which reason we think there was no error in giving the charge assailed.

[15]. We might admit, as contended by appellant, that we misconceived the point raised by it under its sixth assignment, still we think its special charge No. 4 should not have been given for the additional reason that the condition of things mentioned therein was not pleaded by plaintiff as negligence on the part of the defendant. Therefore the issue presented by such special charge was not in the case, for which reason the same was properly refused.

After due consideration of all the questions raised by said motion, we are inclined to adhere to our original opinion; and, believing that no error has been pointed out which will require a reversal of the case, the motion for rehearing is in all things overruled.

Motion overruled.