**RICHMOND et al. v. TRIANGLE MOTORS OF DALLAS.**

No. 4882.

Court of Civil Appeals of Texas. El Paso.
July 16, 1952.

Rehearing Denied Nov. 19, 1952.

Hugh L. Steger, Storey, Sanders, Sherrell & Armstrong, Dallas, for appellant Richmond.

Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellant, Indemnity Co.

Carter & Gallagher, Carrington, Gowan, Johnson & Walker, W. Crozier Gowan, R. Guy Carter and Ben T. Warder, Jr., all of Dallas, for appellees.

McGILL, Justice.

This is an appeal from a judgment of the District Court of Dallas County, 95th Judicial District. Appellant Benjamin S. Richmond was plaintiff in the trial court, appellee Triangle Motors of Dallas was defendant, and appellant insurers Indemnity and Insurance Company was intervenor.

The suit was for damages for personal injuries suffered by plaintiff when he was crushed by an elevator operated by defendant in a building occupied by defendant. Trial was to a jury, but at the conclusion of the evidence the court withdrew the case from the jury and rendered judgment for defendant.

The controlling questions in this case are whether plaintiff Benjamin S. Richmond was guilty of contributory negligence as a matter of law, and whether the doctrine of, volenti non fit injuria is applicable and affords a complete defense to the cause of action asserted by plaintiff.

We have carefully read the entire statement of facts and examined the original exhibits which were sent up. The following is a fair summary, viewed in the light most favorable to appellants, and is taken from their brief.

Plaintiff is a resident of Dallas, Texas, and at the time of his injury in October, 1947, was a plumber employed by Eubanks Plumbing Company. Defendant Triangle Motors of Dallas, is a Texas Corporation, originally incorporated under the name of Dallas Nash Company, but its name was changed by corporate amendment, subsequent to the time of plaintiff's injury, to Triangle Motors of Dallas. Defendant operated an automobile sales and service business at 2019 Pacific Street in Dallas on October 27 and 28, 1947.

Through plaintiff's Requests for Admissions, defendant admitted ordering on October 27, 1947, the unstopping of a drain and the installation of a drain cover on its car-wash rack drain located near the elevator in its building at the rear or north end of the building on the second floor, together with other plumbing repairs on the first floor; and such order was placed with Eubanks Plumbing Company of Dallas. Defendant further admitted that pursuant to such order and "at the invitation of Defendant" plaintiff Richmond and his helper performed plumbing work on the drain of such wash rack as well as other plumbing work and repairs at its premises on October 27 and October 28, 1947.

Plaintiff and his helper went to defendant's building for the first time in the afternoon of October 27, 1947, in response to defendant's order for their service, and unstopped the drain on the wash rack located on the second floor of the building behind and adjacent to the elevator shaft on that floor. On the following day, October 28, 1947, plaintiff and his helper returned to defendant's building to finish their work and install the cover on the wash rack drain located on the second floor, and plaintiff, while on the second floor, was struck and crushed by defendant's elevator.

On the first day plaintiff's plumbing truck with his tools necessary for unstopping the drain was taken to the second floor on the elevator by a colored operator. The tools used that day, which were carried up on the truck, weighed 65 to 70 pounds. The job on the second floor was completed the first day with the exception of obtaining and placing a drain cover on the wash rack drain.

On the second day, October 28, 1947, plaintiff first returned alone to defendant's place of business and worked on a tank closet on the first floor, leaving to obtain a fitting—he returned about 11 o'clock in the morning with his helper and his truck was parked on the first floor within three feet of the elevator shaft on that floor. Plaintiff and his helper completed their work on the first floor and then plaintiff, after instructing his helper to load the tools in the truck parked by the elevator shaft, took the drain cover which he had brought and walked up the stairs to the second floor to install it on the wash rack. Plaintiff testified there were 31 steps in the stairway

from the first to second floor and the wooden stairs were worn and needed replacing.

No tools were needed for a normal installation of the drain cover. When plaintiff attempted to install the drain cover on the wash rack located on the second floor near the elevator shaft, it would not fit due to concrete in the grooves, and Phinney Wallace, an employee of defendant who was with plaintiff on the second floor, suggested that plaintiff get his hammer and chisel to remove the obstruction. Plaintiff walked around the side of the elevator shaft to the corner of the shaft where the guard gate fastening and switch was located and being at the southwest corner of the shaft. Plaintiff testified that when he first reached the corner of the elevator shaft, he stood with his hand resting on the concrete pillar outside the shaft and called to his helper on the first floor. Plaintiff further stated that, from this position just outside the elevator shaft, he looked down to the first floor through the shaft from the second floor and saw what he thought was the bottom of the elevator and could also see the top of his truck parked on the first floor behind the shaft. At the time plaintiff was looking down in this position, the elevator shaft on the first floor as well as on the second floor was open on the three sides away from the wall of the building, with the exception of mesh wire which enclosed the rear or east side and the south side of the shaft on such floors. Plaintiff testified that he expected no danger from a descending elevator and that he thought he was on the top floor of defendant's building.

Plaintiff testified that at such time and while he was standing in this position, his helper was supposed to be putting tools in the back of his truck on the first floor. Hammering in the body shop of defendant located on the second floor near the elevator shaft produced so much noise that plaintiff could hardly hear. In order to hear his helper when he answered, plaintiff testified that he then got down on his hands and knees by the southwest corner of the shaft where he had stood and called to his helper again and that in this position no part of his body was extended into the shaft.

From this position plaintiff extended his legs back and assumed a position with the lower portion of his body from his belt down on the floor at an angle away from the southwest corner of the shaft, and with the upper part of his body raised at an angle upward from his waist and supported on his elbows, his left elbow being on the floor about twelve inches back from the edge of the shaft, his right elbow cocked on the angle iron at the edge of and outside of the shaft with some portion of the upper right side of his body resting on a beveled concrete footing near the corner of the shaft; and his head, with reference to the edge of the shaft, was raised and was in a position 6 to 8 inches back from the edge of the shaft. Plaintiff further testified with reference to this position:

"Q. To your own knowledge was any portion of your body extended into the shaft? A. No, sir, to the best of my knowledge there wasn't any part of my body in the shaft."

In this position, he could see the top of his truck and testified:

"Q. Now, with reference to the position there, that third position you just described, what else did you see looking down into the shaft? A. Could see the bottom of the elevator, what I thought was the bottom of the elevator."

While in this position, he thought he heard his helper answer him and called for his helper to bring him a hammer and chisel. Still in this position, plaintiff was struck by the elevator descending, the bottom of the elevator first hitting his right arm, jerking him down and then striking and crushing plaintiff across the upper part of his back. Medical testimony showed that plaintiff suffered a fracture of both bones in the right wrist, fractures of the seventh neck vertebra, and fracture of the right shoulder blade, resulting in complete paralysis of his body from the waist down and some paralysis from the neck down. Plaintiff further testified there were no bruises or lacerations on his head. Medical witnesses testified plaintiff has 50% permanent partial disability.

The testimony showed that plaintiff had never been on any floor of defendant's building prior to his injury other than the first and second floors and he testified he was under the impression the building had only two floors.

Plaintiff testified he got down close to the floor while calling his helper because "you feel safer when you are down low". On cross examination, he also testified:

"Q. Were you trying to stay out of the elevator shaft? A. Staying back away from it, yes sir."

The elevator is raised and lowered by pulleys attached to each side of the platform with the top open.

Defendant, through Requests for Admissions filed by plaintiff, admitted that on the dates in question the elevator was under its exclusive management and control and was operated by it.

Defendant admitted the guard gate was open at the time the elevator descended and struck plaintiff.

Defendant admitted the guard gate was open, and that the elevator was being operated by an employee of Defendant, authorized by Defendant to operate such.

Phinney Wallace, an employee of Defendant, testified the switch to the elevator guard on the second floor was propped on the day Plaintiff was injured in such manner that the elevator would operate without the guard gate being properly closed. John Parker, service man for Economical Elevator Company, testified that he made service inspections of the elevator during the year 1947 prior to October and that he had advised the service manager of Defendant about finding the elevator switch propped. Defendant's employee operating the elevator at the time Plaintiff was injured, as well as the other elevator operator of Defendant, testified that the guard gate to the elevator, when closed, hit a switch which allowed the elevator to operate, and that when the guard gate was open, the elevator would not operate unless the switch was propped or "fixed" by sticking something under it so it would make contact.

An employee of Defendant testified there was no warning bell or signaling device on the day of Plaintiff's injury.

Plaintiff testified he could hardly hear for the noise of the body shop on the day of the accident. Defendant's employees at the time of the injury testified there was noise on the second floor caused by beating on automobile fenders with air hammers and electric hammers.

Defendant's employee at the time of the injury testified that the guard gates to the elevators were left open when only one man operated the elevator with one standing on the platform and one in the car being moved.

The evidence revealed that there was no call button for the elevator on the second floor of Defendant's building; and the employees of Defendant testified that they and other employees of Defendant "hollered down the shaft" to obtain the elevator.

Plaintiff testified that he heard no one call to him to warn him of the elevator's approach, nor did anyone at Defendant's building warn him to keep away from the elevator shaft. He also testified no one at Defendant's place of business advised him that there was no warning bell on the elevator nor was he advised that the elevator would operate while the guard gate was open. Plaintiff testified he saw no movement of counterbalance weights or pulleys inside the shaft, and that on the day he was struck by the elevator, there was not sufficient light to see the objects shown to be inside the shaft in photographic exhibits which were made with bright flashes of light.

Insurers Indemnity and Insurance Company filed their intervention in the suit to recover benefits paid the Plaintiff under workmen's compensation statute.

The rule by which we are guided which states when contributory negligence is established as a matter of law has been many times enunciated by the Supreme Court. We quote from only one recent case, Lang v. Henderson, 147 Tex. 353, 215 S.W.2d 585, loc. cit. 587 (1–4):

"It is elementary that the question of contributory negligence is generally, by

reason of the very nature of the defense, one of fact for the jury to decide. Gulf, Colorado & S. F. Ry. Co. v. Gasscamp, 69 Tex. 545, 7 S.W. 227; Temple Electric Light Company v. Halliburton, 104 Tex. 493, 140 S.W. 426, Id., Tex.Civ.App., 136 S.W. 584; McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442. According to the authorities above cited and many others (69 Tex. 545, 7 S.W. 228), 'In order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or *it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it.*' (Emphasis added.) Gulf, Colorado & S. F. Ry. Co. v. Gasscamp, supra. Stating the rule in another way, the court can withdraw the question of contributory negligence of the plaintiff from the jury and determine it as a question of law only when from the facts in evidence but one rational inference can be drawn. 38 American Jurisprudence, p. 1054, Sec. 348. It has been said that contributory negligence is a question of fact for the jury when the evidence shows that the plaintiff, with knowledge or chargeable with knowledge of the danger, exercised some care. Henwood v. Gilliam, Tex.Civ.App., 207 S.W.2d 904, application for writ of error refused."

██ In this, as in most cases where the question arises, the difficulty is in determining whether the rule is applicable to the facts. As determinative that plaintiff's conduct convicted him of contributory negligence under the above quoted rule appellee relies on plaintiff's admissions that he knew the elevator shaft was dangerous, that he did not listen for the elevator, did not look above for the elevator, did not look for the pulleys or wheels or for the cables of the elevator, but thought he saw the floor of the elevator simply because he saw "just a wood floor, dirty, it looks like any ground or dirty floor would look like." Just how plaintiff could have supposed he saw the elevator floor in the shaft either on a level with the first floor of the building or on the bottom of the shaft when no floor was there, we do not comprehend. However, we must assume that he did think he saw the elevator floor. With this assumption can it be said as a matter of law that he was negligent because he knew the shaft was dangerous and did not look or listen for these things? We think not. It has been said that "the jury must place itself in the position of the injured party." Galveston, H. & S. A. Ry. Co. v. Wagner, Tex.Civ.App., 291 S.W. 664, 667, affirmed Tex.Com.App., 298 S.W. 552. If we place ourselves in the position of plaintiff with the assumption that he thought he saw the elevator floor below him, what reason would he have had to look up for it, or look for the pulleys, wheels or cables to ascertain where it was, or to listen for it? Wouldn't it be just as reasonable to conclude that under these circumstances plaintiff was not guilty of contributory negligence as to conclude that he was? If so, the issue was for the jury. City of Ft. Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, 955, 159 A. L.R. 125, (Com.App., opinion adopted).

The fact that he knew the shaft was dangerous, as shown by his admissions, obviously refers to the danger of falling into it, and not danger from operation of the elevator. The only Texas case which is cited or which we have found which bears any analogy to the various facts of the case at bar is Haynes v. Bernhard, 268 S.W. 509, by the San Antonio Court of Civil Appeals in which a judgment for plaintiff was affirmed. We have concluded that under all the facts and circumstances in this case the question of whether or not plaintiff was guilty of contributory negligence was for the jury.

██ Whether or not the doctrine of volenti non fit injuria is applicable is a more doubtful question. This doctrine has recently been discussed by the Supreme Court in Wood v. Kane Boiler Works, 238 S.W.2d 172, in which the court refused to apply the doctrine, but cited Walsh v. West Coast Coal Mines, 31 Wash. 2d 396, 197 P 2d 233, where the doctrine was applied. As we understand these authorities the doctrine is closely akin to the doctrine of

assumed risk where the relation of master and servant or some contractual relation exists and to the doctrine of contributory negligence, but it is not synonymous with either of these doctrines. It is implied by law and not by contract. Its underlying principle which denies recovery is that the injured party had knowledge of an obvious danger or equal or better opportunity for such knowledge than the defendant, and in the exercise of an intelligent choice consented to acts or omissions which caused his injury.

■ We think it can reasonably be said as a matter of law that plaintiff had knowledge or an equal opportunity for knowledge with the defendant of all the acts or omissions which caused his injuries. By his own admissions he knew that the elevator had been operated with the guard gate open the day before the accident, and as bearing on his knowledge of this fact, on the day of the accident, in answer to a question:

"And you knew that when you went to the elevator on the second day, at the time you were injured?"

he replied

"Yes sir, I guess I did."

He testified that before the elevator hit him he didn't hear any bell and certainly by reason of having ridden on the elevator the day before the accident he had equal opportunity with defendant to know that the elevator was not equipped with any warning signal. He also had occasion to see that the elevator was operated by only one operator, who sat in the seat of the vehicle being transported, and he knew or had an equal opportunity with defendant to know that such operator in such position could not keep a proper lookout for persons in the vicinity of the open shaft. He also knew of the condition of the light in the shaft. However, can it be said that as a matter of law he "consented to these particular things being done (these particular acts and omissions) which would involve the risk, and consented to take the risk upon himself?" In other words, that he "consented to the acts and omissions which caused his injury which without such consent would be a legal wrong." We think

not. That he did not appreciate the particular danger is evidenced by his testimony that he thought he saw the elevator on the first floor and that he was under the impression that he was on the top floor of the building. We conclude that there were questions of fact for the jury before the doctrine of volenti non fit injuria could become applicable.

■ The evidence was ample to raise issues as to whether plaintiff was an invitee or a mere trespasser and whether defendant was guilty of negligence which proximately caused his injuries.

The judgment is reversed and the cause remanded.

PRICE, Chief Justice (dissenting).

I most respectfully dissent from the disposition made of this appeal by the majority. In the last paragraph of the majority opinion it is stated:

"We think it can reasonably be said as a matter of law that plaintiff had knowledge or an equal opportunity for knowledge with the defendant of all the acts or omissions which caused his injuries. By his own admissions he knew that the elevator had been operated with the guard gate open the day before the accident, and as bearing on his knowledge of this fact, on the day of the accident, in answer to a question:

" 'And you knew that when you went to the elevator on the second day, at the time you were injured?'

he replied

" 'Yes sir, I guess I did.' "

This statement of the facts I think is borne out by the record. Plaintiff knew of the unguarded shaft, knew of the manner in which defendant operated the elevator. In my opinion in such a case defendant was guilty of no breach of duty owed to plaintiff as an invitee. This court held as follows:

"* * * a proprietor is liable only to an invitee for injuries sustained as a result of hidden defects and conditions known to him and unknown to the invitee, and that he is not liable for

178

injuries caused by conditions of which the invitee has knowledge equal to that of a proprietor, and therefore an equal appreciation of the danger." Blaugrund v. Paulk, Tex.Civ.App., 203 S. W.2d 947, loc. cit. 949.

In this case a writ was denied by the Supreme Court on the ground of no reversible error. The case simply reiterates a proposition of law laid down by several other Texas cases and by a number of text writers.

In my opinion the judgment of the trial court should be affirmed.